D. Loren Washburn (Utah 10993)
Trinity Jordan (Utah 15875)
Jordan E. Westgate (Utah 16098)
ARMSTRONG TEASDALE
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
Telephone:  (801) 401-1600
Facsimile:  (801) 880-2793
lwashburn@atllp.com
tjordan@atllp.com
jwestgate@atllp.com
*Attorneys for Plaintiffs*

<table>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| EXOTIC SMOKE & VAPE, a Utah limited liability company; HOUSE OF HOOKAH SMOKE SHOP, INC., a Utah corporation; IVAPE LLC D/B/A IVAPESLC'S 1 STOP SHOP, a Utah limited liability company; MURRAY VAPES, LLC, a Utah limited liability company; RAJA ENTERPRISES, INC. D/B/A SMOKERS GURU #2, a Utah corporation; SHOP&GIFT ZONE, LLL, a Utah limited liability company; SMOKE CITY, INC., a Utah corporation; SMOKE LAND SLC, LLC, a Utah corporation; SMOKER'S CONNECTION LLC, a Utah limited liability company; SMOKERS POINT LLC, a Utah limited liability company; TARAN, INC. D/B/A B'S SMOKE SHOP, a Utah corporation; and WORLD OF VAPES LLC, a Utah limited liability company, <br><br>   Plaintiffs, <br><br> vs. <br><br> Hon. SPENCER J. COX, Governor of the State of Utah, in his official capacity; | **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> Case No. 2:22-cv-00408-HCN <br><br> Judge Howard C. Nielson, Jr. |

</table>

1

| | |
|---|---|
| NATHAN CHECKETTS, Executive Director of the Utah Department of Health, in his official capacity; ANGELA DUNN, M.D., Executive Director of the Salt Lake County Department of Health, in her official capacity; ERIC EDWARDS, Executive Director of the Utah County Health Department, in his official capacity; LEHI CITY, a municipality and political subdivision of the State of Utah; MIDVALE CITY, a municipality and political subdivision of the State of Utah; MURRAY CITY, a municipality and political subdivision of the State of Utah; SALT LAKE CITY, a municipality and political subdivision of the State of Utah; SOUTH SALT LAKE CITY, a municipality and political subdivision of the State of Utah; TAYLORSVILLE CITY, a municipality and political subdivision of the State of Utah; WEST JORDAN CITY, a municipality and political subdivision of the State of Utah; WEST VALLEY CITY, a municipality and political subdivision of the State of Utah, Defendants. | |

Plaintiffs Exotic Smoke & Vape; House of Hookah Smoke Shop, Inc.; iVape LLC d/b/a iVapeSLC's 1 Stop Shop; Murray Vapes, LLC; Raja Enterprises, Inc. d/b/a Smokers Guru #2; Shop&Gift Zone, LLC; Smoke City, Inc.; Smoke Land SLC, LLC; Smoker's Connection LLC; Smokers Point LLC; Taran, Inc. d/b/a B's Smoke Shop; and World of Vapes (collectively, "Plaintiffs"), through counsel, complain against Defendants Hon. Governor Spencer J. Cox, Governor of the State of Utah; Nathan Checketts, Executive Director of the Utah Department of Health; Angela Dunn, M.D., Executive Director of the Salt Lake County Department of Health; Eric Edwards, Executive Director of the Utah County Health Department (Defendants who are either a Health Department or the Director of a Health Department may be collectively referred to

2

as a "Permitting Entity"); Lehi City, a municipality and political subdivision of the State of Utah; Midvale City, a municipality and political subdivision of the State of Utah; Murray City, a municipality and political subdivision of the State of Utah; Salt Lake City, a municipality and political subdivision of the State of Utah; South Salt Lake City, a municipality and political subdivision of the State of Utah; Taylorsville City, a municipality and political subdivision of the State of Utah; West Jordan City, a municipality and political subdivision of the State of Utah; and West Valley City, a municipality and political subdivision of the State of Utah (Defendants who are a municipality may be referred to as a "Licensing Agency") (collectively, all Defendants may be referred to as "Defendants"). In support of the Complaint, Plaintiffs allege the following:

Where, as here, the government legislates out of fear and emotion, the result is a statutory scheme disjointed from logic. Over the last 10 years, the Utah Legislature has enacted several bills to strictly regulate tobacco retailers within the State. Plaintiffs, as Retail Tobacco Specialty Businesses, have borne the brunt of these regulations with the promise that they would be exempt from statutory provisions prohibiting them from being located with 1,000 feet of a school. Relying on their grandfathered status in prior rounds of legislation, Plaintiffs invested substantial resources to comply with increased regulations the Legislature imposed on only one market segment,  aimed at curbing youth vaping, including applying for and maintaining retail tobacco specialty business permits, implementing electronic systems to verify identification, and prohibiting individuals under the age of 21 from entering the premises.

Despite Plaintiffs' substantial efforts and compliance with ever-changing regulations, the Utah Legislature enacted Senate Bill 189, which strips Plaintiffs of their grandfathered status and requires them to cease operations as Retail Tobacco Specialty Businesses on July 1 of this year.

Revocation of their business permits will occur without Plaintiffs having a meaningful opportunity to be heard and without evidence showing that they have in any way contributed to the harms the Legislature claimed it was attempting to address: use of vape and tobacco products by underage individuals. In fact, the State's actions, if motivated by a desire to address youth tobacco use, are not rational because the actions they are taking have the effect of harming complaint businesses who have been partners in combatting youth tobacco use by taking away their ability to run businesses in their locations.

Over the years, Plaintiffs have undertaken extensive efforts to no avail to collaborate with the government to find a solution that aids the State's interest in preventing youth access to electronic cigarette products while also allowing Plaintiffs to operate in their current locations. They have also identified loopholes and inequities in the law that allow General Tobacco Retailers and other non-compliant businesses to be scrutinized at a lower standard than Retail Tobacco Specialty Businesses. Plaintiffs bring this lawsuit now because their efforts to persuade the State to enact a rational regulatory regime have broken down and the Legislature, in essence, invited them to sue to recover damages incurred from the regulatory taking.

During the 2021 General Session, the Chief Sponsor of Senate Bill 189, acknowledged that the State had evaluated its potential liability for Retail Tobacco Specialty Businesses' takings claims and concluded that "there is some risk to the State." Senate Floor Audio, Day 31, at 1:19 (Feb. 19, 2022) (Senator Vickers' testimony). In response, Senator McCay doubled down, proclaiming, "Let's draw a line and decide that's our safety boundary for our kids." If the boundary "causes a business to go out of . . . business and it requires us to pay them the damages that are due, then let's absorb the liability." *Id.* (Senator McCay's testimony). Nevertheless, the State has

4

done nothing to pay Plaintiffs "just compensation" for its regulatory taking and has instead invited this litigation due to the State's failure to comply with its constitutional mandate.

## **COMPLAINT**

1.      Plaintiffs are a group of business entities licensed and permitted under Utah law to conduct business as Retail Tobacco Specialty Businesses. They bring this action to declare unconstitutional and enjoin the enforcement provisions of the Senate Bill 189, entitled "Tobacco Retailer Amendments."

2.      Plaintiffs have invested significant time, money, and effort to operate lawfully within the State of Utah by complying with increasingly strict federal, state, and local laws and regulations governing the sale of tobacco, electronic cigarettes, and nicotine products.

3.      Despite Plaintiffs' commitment to operate legally and aid the State's interest in curbing youth access to tobacco and electronic cigarette products, the Legislature passed the Tobacco Retailer Amendments, which require Plaintiffs to shut down by July 1, 2022, because they are purportedly located within 1,000 feet of a public or private K–12 school.

4.      The Tobacco Retailer Amendments effectively revoke Plaintiffs' status as grandfathered businesses that were exempt from proximity requirements established under prior versions of the law and therefore will require Plaintiffs to shut down.

5.      Plaintiffs received notices from the Salt Lake County Department of Health and Utah County Department of Health, notifying them of the July 1 deadline. *See* <u>Exhibit A</u>, true and correct copies of letters from the health departments.

6.     The legislative decision to revoke grandfathered status for Retail Tobacco Specialty Businesses located proximate to schools was done without evidence to show that the regulations would reduce youth access to and use of tobacco, electronic cigarette, or nicotine products.

7.     Rather, the Legislature relied on raw emotion and legislated with the intent to force compliant businesses to close permanently without ever receiving an opportunity to be heard on the issue.

8.     If the Tobacco Retailer Amendments take effect on July 1, 2022, they will unconstitutionally, arbitrarily, capriciously, and unlawfully deprive Utah businesses and their owners of protected property interests without just compensation—an action that amounts to an unlawful regulatory taking by the State of Utah.

## PARTIES

9.     Exotic Smoke & Vape is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. Exotic Smoke & Vape is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Samer Salih is an authorized representative of Exotic Smoke & Vape. Mr. Salih resides in Salt Lake County, Utah.

10.     House of Hookah Smoke Shop, Inc. is a Utah corporation with its principal place of business in Salt Lake County, Utah. House of Hookah is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. M. Irfan is an authorized representative of House of Hookah. Mr. Irfan resides in Salt Lake County, Utah.

11.     iVape LLC d/b/a iVapeSLC's 1 Stop Shop is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. iVape is a Retail Tobacco Specialty

Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Grady Mason is an authorized representative of iVape. Mr. Mason resides in Salt Lake County, Utah.

12.     Murray Vapes is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. Murray Vapes is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Ahmad Saif and Hussein Yousef is an authorized representative of Murray Vapes. Mr. Saif resides in Salt Lake County, Utah, and Mr. Yousef resides in Davis County, Utah.

13.     Shop&Gift Zone, LLC is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. Shop&Gift Zone, LLC is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Sabah Alessawi is an authorized representative of Shop&Gift Zone. Mr. Alessawi resides in Salt Lake County, Utah.

14.     Smoke City, Inc. is a Utah corporation with its principal place of business in Salt Lake County, Utah. Smoke City is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Frederick Santiago, Jr. is an authorized representative of Smoke City. Mr. Santiago resides in Salt Lake County, Utah.

15.     Smoke Land SLC, LLC is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. Smoke Land is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Ahmed Nasarallah is an authorized representative of Smoke Land. Mr. Nasarallah resides in Salt Lake County, Utah.

16.     Smoker's Connection LLC is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. Smoker's Connection is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Ahmad Alshemary is an authorized representative of Smoker's Connection. Mr. Alshemary resides in Salt Lake County, Utah.

17.     Raja Enterprises, Inc. d/b/a Smokers Guru #2 is a Utah corporation with its principal place of business in Salt Lake County, Utah. Raja Enterprises is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Muhammed A. Raja is an authorized representative of Raja Enterprises. Mr. Raja resides in Salt Lake County, Utah.

18.     Smokers Point LLC is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. Smokers Point is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Ghulam Mustafa is an authorized representative of Smokers Point. Mr. Mustafa resides in Salt Lake County, Utah.

19.     Taran, Inc. dba B's Smoke Shop is a Utah corporation with its principal place of business in Utah County, Utah. Taran, Inc. is a Retail Tobacco Specialty Business recognized, licensed, and permitted under Utah Code sections 10-8-41.6 and 26-62-202. Taranjit Singh is an authorized representative of Taran, Inc. Mr. Singh resides in Utah County.

20.     World of Vapes LLC is a Utah limited liability company with its principal place of business in Salt Lake County, Utah. World of Vapes is recognized as a Retail Tobacco Specialty

Business under Utah Code sections 10-8-41.6 and 26-62-202. Aydin Ibrahem is an authorized representative of World of Vapes. Mr. Ibrahem resides in Salt Lake County, Utah.

21.     Governor Cox is sued in his official capacity as the Governor of the State of Utah. According to Utah law, the Governor must "supervise the official conduct of all executive and ministerial officers" and "see that all offices are filled and the duties thereof performed." Utah Code § 67-1-1(1)–(2). As such, Governor Cox is responsible for the execution of the Tobacco Retailer Amendments.

22.     Nathan Checketts, M.P.A. is sued in his official capacity as the Executive Director of the Utah Department of Health. He is responsible to protect the public's health through preventing avoidable illness, injury, disability, and premature death; assuring access to affordable, quality health care; and promoting healthy lifestyles. He is also responsible for the enforcement of the Tobacco Retailer Amendments.

23.     Angela Dunn, M.D., M.P.H. is sued in her official capacity as the Executive Director of the Salt Lake County Department of Health. She is responsible for protecting the health of residents of Salt Lake County through preventing avoidable illness, injury, disability, and premature death; assuring access to affordable, quality health care; and promoting healthy lifestyles. She is also responsible for the enforcement of the Tobacco Retailer Amendments.

24.     Eric Edwards, M.P.A., M.C.H.E.S. is sued in his official capacity as Executive Director of the Utah County Health Department. He is responsible for protecting the health of residents of Utah County through preventing avoidable illness, injury, disability, and premature death; assuring access to affordable, quality health care; and promoting healthy lifestyles. He is also responsible for the enforcement of the Tobacco Retailer Amendments.

25.     Lehi City is a municipality and political subdivision of the State of Utah. Lehi City officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of Lehi City municipal code.

26.     Midvale City is a municipality and political subdivision of the State of Utah. Midvale City officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of Midvale City municipal code.

27.     Murray City is a municipality and political subdivision of the State of Utah. Murray City officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of Murray City municipal code.

28.     Salt Lake City is a municipality and political subdivision of the State of Utah. Salt Lake City officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of Salt Lake City municipal code.

29.     South Salt Lake City is a municipality and political subdivision of the State of Utah. South Salt Lake City officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of South Salt Lake City municipal code.

30.     Taylorsville City is a municipality and political subdivision of the State of Utah. Taylorsville City officials are responsible for reviewing and granting or denying applications for

Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of Taylorsville City municipal code.

31.     West Jordan City is a municipality and political subdivision of the State of Utah. Taylorsville City officials are responsible for reviewing and granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of West Jordan City municipal code.

32.     West Valley City is a municipality and political subdivision of the State of Utah. West Valley City officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code section 10-8-41.6(3)(a) and relevant portions of West Valley City municipal code.

## JURISDICTION AND VENUE

33.     Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1367; § 1983 of the Civil Rights Act; and the First, Fifth, and Fourteenth Amendments to the United States Constitution.

34.     Venue is proper in this Court under 28 U.S.C. § 1391(b)–(c) because the claims arose within this district, and the issues present a federal question. Additionally, Defendants are sued in their official capacities and their official places of business are located within this District.

35.     Plaintiffs require immediate relief from this Court because they (a) are incurring financial damage; (b) will continue to incur financial damage; and (c) will be divested of a substantial portion of their income, business interests, investments, and community goodwill on or before July 1, 2022.

## GENERAL ALLEGATIONS

### *"Retail Tobacco Specialty Businesses" are First Recognized as a Distinct Category of Tobacco Retailers in 2012*

36.     During the 2012 General Session, the Utah Legislature passed House Bill 95, entitled "Retail Sale of Tobacco Products," which Governor Gary R. Herbert signed into law on March 19, 2012 (the "2012 Legislation").

37.     The Chief Sponsor of the 2012 Legislation, Representative Paul Ray, explicitly stated that the legislative intent was to address the spice "epidemic" in our community and prevent new tobacco retailers from acting as a front "to sell paraphernalia, spice, and ivory wave drugs to kids." Vaping was never mentioned during the 2012 legislative debates.

38.     To further regulate smoke shops, the 2012 Legislation created a distinction between Retail Tobacco Specialty Businesses and other tobacco retailers. *See* Utah Code § 10-8-41.6 (2012) (regulating retail tobacco specialty businesses in municipalities); *id.* § 17-50-333 (2012) (regulating retail tobacco specialty businesses in counties) (Utah Code sections 10-8-41.6 and 17-50-333 are collectively referred to herein as the "2012 RTSB Act").[1]

39.     The 2012 RTSB Act defined a "Retail Tobacco Specialty Business" as a commercial establishment in which:

> (i) the sale of tobacco products accounts for more than 35% of the total annual gross receipts for the establishment;

> (ii) food and beverage products, excluding gasoline sales, is less than 45% of the total annual gross receipts for the establishment; and

---

[1] The verbiage in Utah Code sections 10-8-41.6 and 17-50-333 was nearly identical. The only exception was that the terms "municipality" and "county" were interchanged between the two sections. In this Complaint, the term "Licensing Entity" is used and represents both governmental entities.

(iii) the establishment is not licensed as a pharmacy under Title 58, Chapter 17b, Pharmacy Practice Act (the "2012 Definition").

*Id.* § 10-8-41.6(1)(b) (2012).

40.     By implication only, "General Tobacco Retailers"—a subsequently introduced category of tobacco retailers—were those retailers that did not fall within the 2012 Definition.

41.     Beginning July 1, 2012, the 2012 RTSB Act required an entity that intended to operate as a Retail Tobacco Specialty Business to obtain a license from the municipality and/or county in which the entity was located. *Id.* §§ 10-8-41.6(3)–(4) (2012); 17-50-333(3)–(4) (2012).

42.     Municipalities and counties were prohibited from issuing a license to a Retail Tobacco Specialty Business if it was located within:

(i) 1,000 feet of a community location;

(ii) 600 feet of any other Retail Tobacco Specialty Business; or

(iii) 600 feet from any property used or zoned for agricultural use or residential use (the "2012 Proximity Requirements").

*Id.* §§ 10-8-41.6(5)(a) (2012); 17-50-333(5)(a) (2012).

43.     The 2012 RTSB Act defined "community location" to mean

(i) public or private kindergarten, elementary, middle, junior high, or high school; (ii) a licensed child-care facility or preschool; (iii) a trade or technical school; (iv) a church; (v) a public library; (vi) a public playground; (vii) a public park; (viii) a youth center or other space used primarily for youth oriented activities; (ix) a public recreational facility; or (x) a public arcade.

*See id.* §§ 10-8-41.6(1)(a) (2012); 17-50-333(1)(a) (2012).

44.     Tobacco retailers that had an active business license and were operating lawfully within the Licensing Entity's jurisdiction on or before May 8, 2012, were exempt from the 2012 Proximity Requirements—meaning those preexisting businesses could remain in their location

near a community location, another Retail Tobacco Specialty Business, or agricultural or residential use area indefinitely—provided that the business (i) continuously renewed its business license without relapse or permanent revocation; (ii) was not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (iii) did not substantially change the business premises or its business operation; and (iv) continued to comply with other laws and ordinances governing the operation of Tobacco Retailers (the "2012 Grandfathering Provision"). *Id.* §§ 10-8-41.6(7) (2012); 17-50-333(7) (2012).

45.     The 2012 Amendments did not require municipalities or counties "to issue a business license to a retail tobacco special business." *Id.* §§ 10-8-41.6(6)(a)(i) (2012); 17-50-333(6)(a)(i) (2012). And, in fact, municipalities and counties were afforded discretion to enact "more restrictive requirements on a tobacco specialty business than provided for in this section." *Id.* §§ 10-8-41.6(6)(a)(ii) (2012); 17-50-333(6)(a)(ii) (2012).

46.     Following enactment of the 2012 RTSB Act, only those tobacco retailers that were eligible under the 2012 Grandfathering Provision or that could establish a location that did not violate the 2012 Proximity Requirements could operate as a Retail Tobacco Specialty Business. *See generally id.* §§ 10-8-41.6 (2012); 17-50-333 (2012).

### The Utah Legislature Amends the 2012 RTSB Act
### to Remedy Enforcement Issues

47.     During the 2018 General Session, the Utah Legislature passed House Bill 324, entitled "Tobacco Regulations Amendments," which Governor Herbert signed into law on March 19, 2018 (the "2018 Amendments"). The 2018 Amendments amended the 2012 RTSB Act and enacted several new statutes to govern Retail Tobacco Specialty Businesses.

14

48.     The Senate Sponsor of the 2018 Amendments, Senator Evan J. Vickers, explained that enforcement of the 2012 RTSB Act had not occurred as the Legislature intended. Specifically, municipalities and/or counties had granted business licenses to approximately 50 new smoke shops that violated the 2012 Proximity Requirements, meaning that these new shops were located within 1,000 feet of a "community location," as defined under Utah Code sections 10-8-41.6(1)(a) (2012) and 17-50-333(1)(a) (2012). In addition, the 2018 Amendments aimed to close a gap in prior legislation that had enabled some restaurants and other business entities to allow patrons to smoke hookah indoors in violation of the Utah Indoor Clean Air Act.

49.     To remedy the enforcement issues, the 2018 Amendments established new licensing requirements for tobacco retailers and charged local health departments, not the Utah State Tax Commission, with issuing permits. Thus, beginning July 1, 2018, tobacco retailers were required to obtain a permit from the local health department with jurisdiction over the physical location where the tobacco retailer operated. *See id.* §§ 10-8-41.6(5)(a)(i) (2018); 17-50-333(5)(a)(i) (2018); 26-62-201(1)(a) (2018).

50.     The Utah Department of Health was tasked with developing a permitting process that complied with the 2018 Amendments; however, each local health department had discretion to develop its own permitting process and promulgate its own rules. *See id.* § 26-62-202(6)(a) (2018).

51.     The 2018 Amendments modified the definition of "Retail Tobacco Specialty Business" to mean a commercial establishment in which:

> (i) the sale of tobacco products accounts for more than 35% of the total quarterly gross receipts for the establishment;

(ii) 20% or more of the public retail floor space is allocated to the offer, display, or storage of tobacco products;

(iii) 20% or more of the total shelf space is allocated to the offer, display, or storage of tobacco products; or

(iv) the retail space features a self-service display for tobacco products." (the "2018 Definition").

*See id.* §§ 10-8-41.6(1)(e) (2018); 17-50-333(1)(e) (2018).

52.     "General Tobacco Retailer" was then defined as "a tobacco retailer that is a not a retail tobacco specialty business." *Id.* § 26-62-102(4) (2018).

53.     Retail Tobacco Specialty Businesses licensed to conduct business in a municipality or county before July 1, 2018, were also required to obtain a permit from the local health department, but their deadline to do so was January 1, 2019. *See id.* §§ 10-8-41.6(5)(b) (2018); 17-50-333(5)(b) (2018); 26-62-201(1)(a) (2018); 26-62-201(4)(b) (2018) (stating that a Retail Tobacco Specialty Business that held a tax commission license that was valid on July 1, 2018, could operate without a permit until December 31, 2019).

54.     As to new licenses issued on or after July 1, 2018, the 2018 Amendments expanded the definition of "community location" to include "a homeless shelter." *See id.* §§ 10-8-41.6(1)(a)(xi) (2018); 17-50-333(1)(a)(xi) (2018).

55.     Under the 2018 Amendments, a tobacco retailer could not receive a license or permit to operate as a Retail Tobacco Specialty Business if it was located within:

(i) 1,000 feet of a community location;

(ii) 600 feet of another retail tobacco specialty business; or

(iii) 600 feet of property used or zoned for

        (A) agricultural use; or

16

(B) residential use (collectively, the "2018 Proximity Requirements").

*Id.* §§ 10-8-41.6(4)(a) (2018); 17-50-333(4)(a) (2018).

56.     The 2018 Amendments also changed the 2012 Grandfathering Provision, modifying the date from May 8, 2012, to December 31, 2015. *See id.* §§ 10-8-41.6(7)(a) (2018); 17-50-333(7)(a) (2018). Thus, Retail Tobacco Specialty Businesses that had a business license and were operating in a municipality or county "in accordance with all applicable laws" on or before December 31, 2015, were exempt from the 2018 Proximity Requirements. *See id.*

57.     A Retail Tobacco Specialty Business would continue to be exempt from the Proximity Requirements if:

> (i) its business license was renewed continuously without lapse or permanent revocation;
>
> (ii) it did not close for business or suspend the sale of tobacco products for more than 60 consecutive days;
>
> (iii) it did not substantially change the business premises or business operation; and
>
> (iv) it maintained the right to operate under the terms of applicable laws, including
>
>> (A) Title 26, Chapter 38, Utah Indoor Clean Air Act;
>>
>> (B) zoning ordinances;
>>
>> (C) buildings codes; and
>>
>> (D) the requirements of a retail tobacco specialty business licensed issued before December 31, 2015. (the "2018 Grandfathering Provision").

*Id.* §§ 10-8-41.6(7) (2018); 17-50-333(7) (2018).

58.     In addition to other statutory requirements, Retail Tobacco Specialty Businesses were subject to a myriad of county and local administrative rules, regulations, and ordinances that differed from one jurisdiction to another.

17

59.     In Salt Lake County, for example, these rules and regulations included provisions that assessed a fine, suspended operations, and/or revoked a retail tobacco specialty permit on a graduated basis if any underage sales occurred at the Retail Tobacco Specialty Business. *See id.* § 26-62-305(2). A penalty of not more than $500.00 would be imposed for the first violation; a penalty of $750.00 would be imposed for the second violation within one year at the same location; a continuous 30-day suspension or penalty of $1,000.00 would be imposed for the third violation in two years; and revocation of the permit would occur for a fourth violation within two years of three previous violations. *Id.*

60.     Each Licensing Entity also had its own code requirements, processes, and procedures with which Retail Tobacco Specialty Businesses were required to comply. Penalties for violations included, among other things, complete revocation of the business license.

### *The Legislature Strips Plaintiffs of Grandfathered Status in 2020*

61.     During the 2020 General Session, the Utah Legislature considered at least five bills related to the regulation of the sale of tobacco and electronic cigarette products. *See* H.B. 23, "Tobacco and Electronic Cigarette Amendments" (signed March 30, 2020); H.B. 58, "Electronic Cigarettes in Schools Amendments" (signed March 28, 2020); H.B. 118, "Retail Tobacco Amendments" (not passed); H.B. 135, "Tobacco Settlement Funds Amendments" (not passed); H.B. 375, "Electronic Cigarette Amendments" (not passed).

62.     The Utah Legislature passed House Bill 23, entitled "Tobacco and Electronic Cigarette Amendments," which Governor Herbert signed into law on March 30, 2020 (the "2020 Amendments"). Significantly, in addition to placing tighter restrictions on Tobacco Retailers, the 2020 Amendments stripped all Retail Tobacco Specialty Businesses of the grandfathered status

they had enjoyed under prior versions of the statutes if the retailers were located within 1,000 feet of a school as of August 15, 2020. *See id.* §§ 10-8-41.6(8) (2020); 17-50-333(8) (2020).

63.     The Senate Sponsor of the 2020 Amendments, Kirk A. Cullimore, explained that the intent of this bill was the close a loophole in the law that General Tobacco Retailers were exploiting. Specifically, some tobacco retailers were operating as Retail Tobacco Specialty Businesses even though they were licensed and holding themselves out to be General Tobacco Retailers. This conduct allowed those stores to avoid the extra regulations imposed on Retail Tobacco Specialty Business, including the 2018 Proximity Requirements.

64.     To address the loophole, the 2020 Amendments modified the definition of "Retail Tobacco Specialty Business" to mean a commercial establishment in which:

> (i) the sale of tobacco products <u>and electronic cigarette products</u> accounts for more than 35% of the total quarterly gross receipts for the establishment;
>
> (ii) 20% or more of the public retail floor space is allocated to the offer, display, or storage of tobacco products <u>or electronic cigarette products</u>;
>
> (iii) 20% or more of the total shelf space is allocated to the offer, display, or storage of tobacco products <u>or electronic cigarette products</u>; or
>
> (iv) <u>the commercial establishment</u>:
>
> > A. *<u>Holds itself out as a retail tobacco specialty business</u>*; and
> >
> > B. <u>Causes a reasonable person to believe the commercial establishment is a retail tobacco specialty business</u>;
>
> (v) <u>any flavored electronic cigarette product is sold</u>; or
>
> (vi) the retail space features a self-service display for tobacco products <u>or electronic cigarette products</u>." (the "2020 Definition").

*See id.* §§ 10-8-41.6(1)(g) (2020); 17-50-333(1)(g) (2020) (emphasis added).

65.　　The 2020 Amendments also redefined "tobacco products," providing separate definitions for "electronic cigarette," "electronic cigarette product," "electronic cigarette substance," and "flavored electronic cigarette product." *Id.* § 76-10-101(3)–(6) (2020). "Flavored electronic cigarette product" includes products with the taste or smell of "any fruit, chocolate, vanilla, honey, candy, cocoa, dessert, alcoholic beverage, herb, or spice." *Id.* § 76-10-101(6)(b) (2020). The Legislature excluded only those products that have "a taste or smell of only tobacco, mint, or menthol" or those products that had been granted a premarket tobacco product application by the Food and Drug Administration. *Id.* § 76-10-101(6)(c) (2020).

66.　　In addition to creating more expansive definitions, the 2020 Amendments implemented heightened regulations to reduce the chances that an individual younger than 21 years old could purchase tobacco products or electronic cigarettes from a Retail Tobacco Specialty Business.

67.　　For example, Retail Tobacco Specialty Businesses were now required to electronically verify proof of age for all individuals entering their establishment. *Id.* §§ 26-62-205(1); 26-62-102(9). Additionally, Retail Tobacco Specialty Businesses were required to keep a log of information obtained from an electronic verification program for 180 days. *See id.* § 26-62-401(5)(b)(i).

68.　　Furthermore, the 2020 Amendments strictly prohibited Retail Tobacco Specialty Businesses from allowing individuals under 21 years old to enter their establishments unless accompanied by a parent or legal guardian or unless entering for a bona fide commercial purpose other than the purchase of a tobacco product. *Id.* §§ 26-62-205(3)(a); 26-62-401(6)(b).

69.     Failure to comply with the new requirements subjected the employee and owner of Retail Tobacco Specialty Businesses to fines and, in some instances, permit revocation. *See generally id.* § 26-62-305, -402 (2020).

70.     The 2020 Amendments also made it unlawful for any General Tobacco Retailer or retailer that is not a Retail Tobacco Specialty Business to provide a flavored electronic cigarette product to any person, effectively limiting the sale of flavored electronic cigarette products to sales conducted only in Retail Tobacco Specialty Businesses. *See id.* § 76-10-113.

71.     The 2020 Amendments also modified the 2018 Grandfathering Provision, providing that a business must have been in its current location on or before December 31, 2018, rather than December 31, 2015. *Id.* §§ 10-8-41.6(7)(a) (2020); 17-50-333(7)(a) (2020). This allowed businesses previously considered General Tobacco Retailers to convert to Retail Tobacco Specialty Businesses on July 1, 2020, should they choose to do so (the "2020 Grandfathering Provision").

72.     The 2018 Grandfathering Provision was also amended to exclude from grandfathered status any Retail Tobacco Specialty Business that was located within 1,000 feet of a school, stating, "Beginning August 15, 2020, a Retail Tobacco Specialty Business that has a business license and is operating in a municipality [or county] may not be located within 1,000 feet of any school" (the "School Exemption"). *Id.* § 10-8-41.6(8).

73.     The statute provided no qualifying language in the School Exemption. Thus, under the 2020 Amendments, no Retail Tobacco Specialty Business located within 1,000 feet of a "school" could operate in its current location, regardless of its previously existing grandfathered status. The 2020 Amendments were vague because they failed to define "school." *Id.*

***The Legislature Modifies the 2020 Amendments***
***After Receiving Notice of Constitutional Issues***

74.     After learning of potential litigation to challenge the constitutionality of the 2020 Amendments, the Legislature called a special session in August 2020.

75.     During the 2020 Sixth Special Session, the Utah Legislature passed Senate Bill 6008, entitled "Tobacco Retailer Amendments," which Governor Herbert signed into law on August 31, 2020 (the "2020 Special Session Amendments).

76.     The House Sponsor of the 2020 Special Session Amendments, Representative Jon Hawkins, acknowledged that the bill was drafted after the Legislature learned of potential takings claims to be asserted on behalf of Retail Tobacco Specialty Businesses that were previously grandfathered under prior laws and noted that the aim of these amendments was to "strengthen" the State's position in a future lawsuit.

77.     The 2020 Special Session Amendments created two categories of Retail Tobacco Specialty Businesses. *See id.* §§ 10-8-41.6(7)(a), (c) (2020); 17-50-333(7)(a), (c) (2020).

78.     The first category included Retail Tobacco Specialty Businesses that had been licensed to conduct business as such on or before December 31, 2018. *See id.* §§ 10-8-41.6(7)(a)(i); 17-50-333(7)(a)(i). This category of businesses was complying with all applicable laws except for the 2018 Proximity Requirements. *See id.* §§ 10-8-41.6(7)(a)(ii); 17-50-333(7)(a)(ii). Nevertheless, under the 2020 Special Session Amendments, these Retail Tobacco Specialty Businesses would lose their grandfathered status on July 1, 2021 sunset date if they were "located within 1,000 feet of a public or private kindergarten, elementary, middle, junior high, or high school." *See id.* §§ 10-8-41.6(7)(a)(iii); 17-50-333(7)(a)(iii).

79.     The second category included Retail Tobacco Specialty Businesses that had been issued a permit from the local health department under Utah Code sections 26-62-201 to -207 to operate as either a General Tobacco Retailer or a Retail Tobacco Specialty Business on or before December 31, 2018. *See id.* §§ 10-8-41.6(7)(c)(i); 17-50-333(7)(c)(i). This category of businesses was also complying with all applicable laws except for the 2018 Proximity Requirements. *See id.* §§ 10-8-41.6(7)(c)(ii); 17-50-333(7)(c)(ii). However, this second category of Retail Tobacco Specialty Businesses would not be prohibited from operating within 1,000 feet of a public or private K–12 school until July 1, 2022. *See id.* §§ 10-8-41.6(7)(c)(iii); 17-50-333(7)(c)(iii).

80.     To be eligible to maintain an exemption from other proximity requirements, the second category of stores was required to obtain a permit from the local health department to operate as a Retail Tobacco Specialty Businesses by December 31, 2020. *Id.* §§ 10-8-41.6(d)(i); 17-50-333(d)(i).

### *The Legislature Extends the Relocation Deadline*

81.     During the 2021 General Session, the Utah Legislature passed Senate Bill 189, also entitled "Tobacco Retailer Amendments," which Governor Herbert signed into law on March 17, 2021 (the "Tobacco Retailer Amendments").

82.     Relevant here, the 2021 Amendments required Retail Tobacco Specialty Businesses located within 1,000 feet of a public or private K–12 school to relocate before July 1, 2022, *see id.* § 10-8-41.6(7)(e); § 17-50-333(7)(e), effectively requiring them to cease operations on that date.

23

83.    If a Retail Tobacco Specialty Business relocated within the relevant timeframe, it would be exempt from the proximity requirements prohibiting it from being in residential areas if it relocated to strip mall in a location zoned for commercial use. *See id.*

84.    Plaintiffs are all Retail Tobacco Specialty Businesses that are purportedly located within 1,000 feet of a public or private K–12 school. Under the 2021 Amendments, Plaintiffs are required to cease operations by July 1, 2022, even though they previously enjoyed grandfathered status under prior versions of the law.

### *Exotic Smoke & Vape*

85.    Exotic Smoke & Vape was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about June 2011, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

86.    Exotic Smoke & Vape's primary address is 6271 South Dixie Drive, Suite 6, West Jordan, UT 84084, which is allegedly located within 1,000 feet of Westbrook Elementary School.

87.    Exotic Smoke & Vape has operated as a Retail Tobacco Specialty Business since 2012.

88.    The 2012 Grandfathering Provision allowed Exotic Smoke & Vape to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

89.    Exotic Smoke & Vape applied for and received its first license to operate as a Retail Tobacco Specialty Business.

90.     The 2018 Grandfathering Provision allowed Exotic Smoke & Vape to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

91.     Exotic Smoke & Vape applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about November 2015.

92.     Exotic Smoke & Vape always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

93.     Exotic Smoke & Vape's business license has been continuously renewed without lapse or permanent revocation.

94.     Since June 2011, Exotic Smoke & Vape (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

95.     Exotic Smoke & Vape's lease agreement for its current shop location does not terminate until 2029.

### House of Hookah Smoke Shop, Inc.

96.     House of Hookah was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about April 2009), to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

25

97.     House of Hookah's primary address is 7790 South 700 East, Midvale, Utah 84047, which is allegedly located within 1,000 feet of Union Middle School.

98.     House of Hookah has operated as a Retail Tobacco Specialty Business since at least 2012.

99.     The 2012 Grandfathering Provision allowed House of Hookah to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

100.    House of Hookah applied for and received its first license to operate as a Retail Tobacco Specialty Business.

101.    The 2018 Grandfathering Provision allowed House of Hookah to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

102.    House of Hookah applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about November 2018.

103.    House of Hookah always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

104.    House of Hookah business license has been continuously renewed without lapse or permanent revocation.

105.    Since April 2009, House of Hookah (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate

under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

106.    House of Hookah's lease agreement for its current shop location does not terminate until June 2025.

### *iVape LLC*

107.    iVape was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about December 2014, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

108.    iVape's primary address is 4523 South Redwood Road, Taylorville, UT 84123, which is allegedly located within 1,000 feet of Eisenhower Junior High School.

109.    iVape applied for and received its first license to operate as a Retail Tobacco Specialty Business.

110.    The 2018 Grandfathering Provision allowed iVape to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

111.    iVape applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about December 2018.

112.    iVape always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

113.    iVape business license has been continuously renewed without lapse or permanent revocation.

114.    Since December 2014, iVape (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days (2) has not substantially changed the business premises or its business operation; (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

115.    iVape's lease agreement for its current shop location does not terminate until December 2025.

*Raja Enterprises*

116.    Raja Enterprises d/b/a Smokers Guru #2 was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about October 2009, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

117.    Raja Enterprises' primary address is 1350 South Street State, Salt Lake City, UT 84115, which is allegedly located within 1,000 feet of Challenger School (Salt Lake City).

118.    Raja Enterprises has operated as a Retail Tobacco Specialty Business since at least 2012.

119.    The 2012 Grandfathering Provision allowed Raja Enterprises to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

28

Case 2:22-cv-00408-HCN  Document 2  Filed 06/16/22  PageID.31  Page 29 of 55

120.    Raja Enterprises applied for and received its first license to operate as a Retail Tobacco Specialty Business.

121.    The 2018 Grandfathering Provision allowed Raja Enterprises to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

122.    Raja Enterprises applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department on or about October 2009.

123.    Raja Enterprises always aims to comply with all federal, state, and local laws; ordinances; and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

124.    Raja Enterprises business license has been continuously renewed without lapse or permanent revocation since at least.

125.    Since October 2009, Raja Enterprises (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the business license issued before October 2009.

126.    Raja Enterprises' lease agreement for its current location does not terminate until January 2029.

### Murray Vapes

127.    Murray Vapes was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about November 2017, to

engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

128.     Murray Vapes' primary address is 5318 South State Street, Murray, UT 84107, which is allegedly located within 1,000 feet of Murray High School and Hillcrest Junior High School.

129.     Murray Vapes' location has been permitted as a smoke shop since at least 2012.

130.     Murray Vapes has operated as a Retail Tobacco Specialty Business since at least 2017.

131.     Murray Vapes applied for and received its first license to operate as a Retail Tobacco Specialty Business.

132.     The 2018 Grandfathering Provision allowed Murray Vapes to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

133.     Murray Vapes applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about December 2018.

134.     Murray Vapes always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

135.     Murray Vapes' business license has been continuously renewed without lapse or permanent revocation.

136.     Since November 2017, Murray Vapes (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially

changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

137.    Murray Vapes lease agreement for its current shop location does not terminate until December 2026.

### Shop&Gift Zone LLC

138.    Shop&Gift Zone LLC was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about October 2015 to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

139.    Shop&Gift Zone's primary address is 7093 Redwood Road, West Jordan, UT 84084, which is allegedly located within 1,000 feet of Heartland Elementary School.

140.    Shop&Gift Zone operated as a Retail Tobacco Specialty Business between October 2015 until 2017 at which time it was forced to convert to a mixed retailer.

141.    Shop&Gift Zone applied for and received its first license to operate as a Retail Tobacco Specialty Business.

142.    The 2018 Grandfathering Provision allowed Shop&Gift Zone to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

143.    Shop&Gift Zone applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about October 2015.

144.    Since its inception, Shop&Gift Zone has complied with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

145.    Shop&Gift Zone's business license has been continuously renewed without lapse or permanent revocation.

146.    Since October 2015, Shop&Gift Zone (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

147.    Shop&Gift Zone's lease agreement for its current shop location does not terminate until June 2025.

### Smoke City, Inc.

148.    Smoke City was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about June 2010, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

149.    Smoke City's primary address is 7664 South Redwood Road, Suite A1, West Jordan, Utah 84084, which is allegedly located within 1,000 feet of West Jordan Middle School.

150.    Smoke City has operated as a Retail Tobacco Specialty Business since at least 2012.

151.    The 2012 Grandfathering Provision allowed Smoke City to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

152.    Smoke City applied for and received its first license to operate as a Retail Tobacco Specialty Business.

153.    The 2018 Grandfathering Provision allowed Smoke City to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

154.    Smoke City applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about November 2018.

155.    Smoke City always aims to comply with all federal, state, and local laws; ordinances; and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

156.    Smoke City business license has been continuously renewed without lapse or permanent revocation.

157.    Since September 2010, Smoke City (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

158.    Smoke City's lease agreement for its current shop location does not terminate until September 2024.

*Smoke Land SLC, LLC*

159.    Smoke Land was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about April 2013, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

160.    Smoke Land's primary address is 749 East 3300 South, Salt Lake City, UT 84106, which is allegedly located within 1,000 feet of Roosevelt Elementary School.

161.    Smoke Land has operated as a Retail Tobacco Specialty Business since at least 2012.

162.    The 2012 Grandfathering Provision allowed Smoke Land to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

163.    Smoke Land applied for and received its first license to operate as a Retail Tobacco Specialty Business.

164.    The 2018 Grandfathering Provision allowed Smoke Land to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

165.    Smoke Land applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about 2013.

166.    Smoke Land always aims to comply with all federal, state, and local laws; ordinances; and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

167.    Smoke Land business license has been continuously renewed without lapse or permanent revocation.

168.    Since 2013, Smoke Land (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

169.    Smoke Land's lease agreement for its current shop location does not terminate until 2027.

### Smoker's Connection LLC

170.    Smoker's Connection was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about August 2007, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, tobacco paraphernalia, and other items.

171.    Smoker's Connection's primary address is 1655 West 4100 South Taylorsville, UT 84123, which is allegedly located within 1,000 feet of Taylorsville Elementary School.

172.    Smoker's Connection has operated as a Retail Tobacco Specialty Business since at least 2012.

173.    The 2012 Grandfathering Provision allowed Smoker's Connection to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

174.     Smoker's Connection applied for and received its first license to operate as a Retail Tobacco Specialty Business.

175.     The 2018 Grandfathering Provision allowed Smoker's Connection to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

176.     Smoker's Connection applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department in or about April 2010.

177.     Smoker's Connection always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

178.     Smoker's Connection's business license has been continuously renewed without lapse or permanent revocation.

179.     Since August 2007, Smoker's Connection (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

180.     Smoker's Connection's lease agreement for its current shop location does terminate not until June 2026.

### *Smoker's Point LLC*

181.     Smokers Point was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, on or about April 2010, to engage

36

in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

182.    Smokers Point's primary address is 283 East 3300 South, Salt Lake City, UT 84115, which is allegedly located within 1,000 feet of Granite Park Junior High School.

183.    Smokers Point has operated as a Retail Tobacco Specialty Business since at least 2012.

184.    The 2012 Grandfathering Provision allowed Smokers Point to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

185.    Smokers Point applied for and received its first license to operate as a Retail Tobacco Specialty Business.

186.    The 2018 Grandfathering Provision allowed Smokers Point to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

187.    Smokers Point applied for and received its license as a Retail Tobacco Specialty Permit from the Salt Lake County Health Department on or about April 2010.

188.    Smokers Point always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

189.    Smokers Point business license has been continuously renewed without lapse or permanent revocation.

190.     Since April 2010, Smokers Point (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

191.     Smokers Point's lease agreement for its current shop location does not terminate until March 2026.

### *Taran, Inc.*

192.     Taran Inc. d/b/a B's Smoke Shop was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, on or about May 29, 2012, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

193.     Taran Inc.'s primary address is 785 East 200 South, Suite 7, Lehi, UT, 84043, which is allegedly located within 1,000 feet of Lehi High School.

194.     Taran Inc. has operated as a Retail Tobacco Specialty Business since at least 2012.

195.     The 2012 Grandfathering Provision allowed Taran Inc. to obtain a license from the Utah State Tax Commission to continue operating its business at its current location after the 2012 RTSB Act was passed.

196.     Taran Inc. applied for and received its first license to operate as a Retail Tobacco Specialty Business.

197.    The 2018 Grandfathering Provision allowed Taran Inc. to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

198.    Taran Inc. applied for and received its license as a Retail Tobacco Specialty Permit from the Utah County Health Department in or about May 2012.

199.    Taran Inc. always aims to comply with all federal, state, and local laws, ordinances, and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

200.    Taran Inc.'s business license has been continuously renewed without lapse or permanent revocation.

201.    Since May 2012, Taran Inc. (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

202.    Taran Inc.'s lease agreement for its current shop location does not terminate until December 2030.

### World of Vapes

203.    World of Vapes was organized and registered under the Utah Revised Business Corporation Act, *see* Utah Code sections 16-10a-101 to -1902, in or about January 2016, to engage in the retail sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

39

204.    World of Vapes primary address is 4150 South Carriage Square, Taylorsville, UT 84129, which is allegedly located within 1,000 feet of Taylorsville Elementary School. With the City's consent, World of Vapes relocated and purchased this location in or about August 2017.

205.    World of Vapes has operated as a Retail Tobacco Specialty Business since at least 2016.

206.    World of Vapes applied for and received its license to operate as a Retail Tobacco Specialty Business.

207.    The 2018 Grandfathering Provision allowed World of Vapes to obtain a permit from the local health department to continue operating its business at its current location after the 2018 Amendments were passed.

208.    World of Vapes always aims to comply with all federal, state, and local laws; ordinances; and regulations regulating the sale of tobacco products, electronic cigarette products, nicotine products, and tobacco paraphernalia.

209.    World of Vapes business license has been continuously renewed without lapse or permanent revocation.

210.    Since January 2016, World of Vapes (1) has not closed for business or otherwise suspended the sale of tobacco products for more than 60 consecutive days; (2) has not substantially changed the business premises or its business operation; and (3) has maintained the right to operate under the terms of other applicable laws, including the Utah Indoor Clean Air Act, zoning ordinances, building codes, and the requirements of the business license.

211.    World of Vapes owns its current shop location.

***Plaintiffs will Suffer Imminent Harm from
the Tobacco Retailer Amendments Will Harm***

212. Under the Tobacco Retailer Amendments, Plaintiffs cannot operate as Retail Tobacco Specialty Businesses in their current locations after July 1, 2022, because they are located within 1,000 feet of at least one public or private K–12 school.

213. Despite Plaintiffs' long-standing presence at their current locations and their lawful operation as Retail Tobacco Specialty Businesses under both the 2012 and 2018 Grandfathering Provisions, the Tobacco Retailer Amendments effectively revoke Plaintiffs' retail tobacco permits on July 1, 2022.

214. This arbitrary and capricious revocation will occur without Plaintiffs having a violation that would result in revocation of their permits or that otherwise prevent Plaintiffs from renewing their permits or licenses to operate as Retail Tobacco Specialty Businesses.

215. The arbitrary and capricious revocation will occur without Plaintiffs receiving notice and a meaningful opportunity to be heard. Furthermore, any such revocation will not be appealable.

216. Finally, this arbitrary and capricious revocation will occur without Plaintiffs or any of their managers, directors, officers, or employees having recent violations for an underage sale of tobacco products.

217. Plaintiffs train employees to ensure they verify the age of every patron. In fact, they require employees to use an age verification scanner before selling any tobacco, electronic, or nicotine products to any patron.

218. Before implementing an age verification device, Plaintiffs' employees inspected a government-issued ID for every patron to verify his or her age.

219.    Plaintiffs' current revenue is generated almost exclusively from the sale of tobacco-related products to consenting adults, including electronic cigarette products and accessories.

220.    Even if Plaintiffs may convert their permits to operate as a General Tobacco Retailers at their current locations, gross sales will decrease substantially because they will be prohibited from selling flavored electronic cigarette products that currently represent the bulk of their sales.

221.    Tobacco-related products are the overwhelming majority of Plaintiffs' current inventory and sales, so the amount it will be able to sell will be nominal in comparison, causing Plaintiffs to lose most or all their customer base and income. Plaintiffs will be forced to close permanently.

222.    Plaintiffs' sales may decrease further when some nearby General Tobacco Retailers convert to Retail Tobacco Specialty Businesses and assume Plaintiffs' former customer base.

223.    Plaintiffs will be unable to liquidate their product because they will be prohibited from selling flavored electronic cigarette products without their retail tobacco specialty permits.

224.    Without adequate sales, Plaintiffs will not have the income necessary to pay employees, pay rent, or pay for other business-related expenses.

225.    Moreover, because the value of a Retail Tobacco Specialty Business is based on its ability to obtain and maintain a retail tobacco specialty permit, the value of Plaintiffs' businesses has been entirely, arbitrarily, and immediately decreased because potential purchasers would be unwilling to buy a business that must cease operating on July 1, 2022.

226.    Plaintiffs have entered into their lease agreements, modified their stores, and spent considerable amounts of time and money building up their store under the reliance of the

permitting processes, grandfather clauses, and statutory scheme that was put into place by the State.

227.     The Tobacco Retailer Amendments regulate and restrict Plaintiffs' use of their private property and distinct investment-backed expectations in a manner so onerous that it is tantamount to a direct appropriation or ouster, and as such, constitute a regulatory taking of Plaintiffs' business and property.

**<u>FIRST CAUSE OF ACTION</u>**
**(The Tobacco Retailer Amendments Amount to a Regulatory Taking)**

228.     Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

229.     The United States Constitution is the supreme law of the land. Under the Supremacy Clause, no law may be enacted or applied in a manner that is inconsistent with the United States Constitution. As a result, Defendants may not rely on "the police power" to deprive Plaintiffs of their constitutional rights. *See* Utah Code §§ 10-8-41.6(2); 17-50-333 (2) (stating that "[t]he regulation of a retail tobacco specialty business is an exercise of the police powers of the state by the state or by delegation of the state's police powers to other governmental entities).

230.     The Fifth Amendment to the United States Constitution enables the government to take private property, subject to two conditions. First, the taking must be for a "public purpose." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984). Second, if the taking is for a public purpose, it must be accompanied by the payment of just compensation. *First Eng. Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 314 (1987).

231.    The Takings Clause of the Fifth Amendment is made applicable to the states through the Fourteenth Amendment to the United States Constitution.

232.    More than 200 years ago, the United States Supreme Court established that the Fifth Amendment could not be used to justify "a law that takes property from A. and gives it to B." *Calder v. Bull*, 3 Dall. 386, 388 (1798). The Supreme Court confirmed that the government may not achieve that same result under the pretext of a public taking "when its actual purpose was to bestow a private benefit." *Kelo v. City of New London*, 545 U.S. 469, 477–78 (2005).

233.    In contrast to a physical taking, a regulatory taking occurs where "government regulation of private property [is] . . . so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

234.    A regulatory taking occurs—and just compensation is required—when "regulatory actions [occur] that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner" with the inquiry "focus[ing] directly upon the severity of the burden that [the] government imposes upon private property rights." *Id.* at 539.

235.    When assessing whether a regulatory taking has occurred, courts assess "the regulation's economic impact on the claimant, the extent to which it interferes with distinct investment-backed expectations, and the character of the government action." *Id.* 528–29.

236.    The Tobacco Retailer Amendments destroy Plaintiffs' ability to conduct business and interferes with their distinct, investment-backed expectations because Plaintiffs that were previously grandfathered are no exempt and must close their doors on July 1, 2018, if they are located within 1,000 feet of a public or private K–12 school.

237.     The Tobacco Retailer Amendments also eliminate Plaintiffs' ability to capitalize on their investment-backed expectations because Plaintiffs are no longer able to liquidate their assets or sell their establishments, as no rational purchaser desires to purchase an entity that must cease operation on July 1, 2022.

238.     The restrictions imposed by the Tobacco Retailer Amendments and specifically, the School Exemption, deny Plaintiffs the economically viable use of their property and fail to provide any method by which Plaintiffs may seek redress or compensation for their loss.

239.     There is no set of circumstances that exist where the Tobacco Retailer Amendments would be valid.

240.     Plaintiffs have no adequate remedy at law.

241.     Accordingly, Plaintiffs are entitled to entry of a judgment declaring the Tobacco Retailer Amendments facially unconstitutional and unconstitutional as applied to Plaintiffs, and to an order enjoining the enforcement of the Tobacco Retailer Amendments against Plaintiffs and other similarly situated businesses within the State of Utah.

## SECOND CAUSE OF ACTION

### (The Tobacco Retailer Amendments Violate the Due Process Clause)

242.     Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

243.     The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property without due process of law."

244.     Utah law recognizes that under certain circumstances, a person's ability to conduct his or her business represents a substantial property interest subject to protection under the United States Constitution.

245.     Procedural due process requirements provide Plaintiffs the right, at a minimum, to notice and an opportunity to be heard in a meaningful manner before the deprivation of a property interest.

246.     The Tobacco Retailer Amendments require Permitting Agencies and Licensing Agencies to revoke the permit and license of businesses that have been lawfully operating within the State of Utah without providing the business owners notice of the proposed revocation or an opportunity to be heard in a meaningful manner before or following the revocation.

247.     Even if the Tobacco Retailer Amendments did allow Plaintiffs an opportunity to be heard related to the revocation of their permits, the law requires the revocation, and Plaintiffs have no opportunity for redress without suffering substantial financial losses, degradation of business interests, and loss of community good will.

248.     The Tobacco Retailer Amendments provide no procedural guidelines assuring a prompt judicial review of the legality of the revocation of Plaintiffs' permits, products, or records seized by the Attorney General and his agents or inspectors, thereby denying Plaintiffs the use of their property without appropriate procedural protections in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

249.     The Tobacco Retailer Amendments and their enforcement are so arbitrary that they constitute a violation of Plaintiffs' substantive due process rights under the United States Constitution.

250.    The Tobacco Retailer Amendments also arbitrarily violate Plaintiffs' procedural due process rights in violation of the United States Constitution.

251.    Plaintiffs have no adequate remedy at law.

252.    Accordingly, Plaintiffs are entitled to entry of a judgment declaring the Tobacco Retailer Amendments facially unconstitutional and unconstitutional as applied to Plaintiffs, and to an order enjoining the enforcement of the 2020 Amendments against Plaintiffs and other similarly situated businesses within the State of Utah.

**THIRD CAUSE OF ACTION**

**(Violations of the Fifth and Fourteenth Amendments to the
U.S. Constitution: The Tobacco Retailer Amendments are Unconstitutionally Vague)**

253.    Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

254.    The restrictions contained in the Tobacco Retailer Amendments do not provide fair notice of what conduct is permissible.

255.    Specifically, the restrictions in the Tobacco Retailer Amendments fail to articulate clear standards that prevent arbitrary and discriminatory enforcement by Licensing Entities and Permitting Agencies.

256.    The provisions of the 2018 and 2020 Amendments all require the Utah Department of Health or various Licensing Entities to promulgate rules establishing the proper permitting process; however, the Utah Department of Health has not done so, and instead local health departments have each promulgated their own rules and enforcement procedures.

257.    Moreover, there is no provision in the Tobacco Retailer Amendments that instructs a Licensing Entity or Permitting Agency to revoke the permit issued to a Retail Tobacco Specialty

Business on or after July 1, 2022, thereby creating unequal enforcement and application of the rule (despite its unconstitutionality).

258.    Further, the Tobacco Retailer Amendments provide criminal penalties in the nature of a fine, and revocation of a protected property interest for the violation of the statute under a vague, indefinite, and ambiguous law that reasonable people would differ as to its application and interpretation, thereby denying Plaintiffs' substantive and procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

259.    As a result, these restrictions violate the Fifth and Fourteenth Amendments to the United States Constitution and should be enjoined from enforcement.

260.    Plaintiffs have no adequate remedy at law.

261.    Accordingly, Plaintiffs are entitled to entry of a judgment declaring the Tobacco Retailer Amendments facially unconstitutional and unconstitutional as applied to Plaintiffs, and to an order enjoining the enforcement of the Tobacco Retailer Amendments against Plaintiffs and other similarly situated businesses within the State of Utah.

## FOURTH CAUSE OF ACTION

### (Violation of the Supremacy Clause of the United States Constitution)

262.    Plaintiffs restate and incorporate by reference, as though fully set forth herein, the allegations contained in each of the paragraphs above.

263.    The restrictions contained in the Tobacco Retailer Amendments are null and void under the Supremacy Clause, Art. VI, Clause No. 2 of the United States Constitution, in light of the Food, Drug, and Cosmetic Act ("FD&C Act"), United States Code, Title 21. Specifically, the Code provides that tobacco product retailers are not required to register their establishments.

264.     By requiring Tobacco Retailers to register and obtain permits and licenses in contravention of the Food, Drug, and Cosmetic Act, the Tobacco Retailer Amendments violate the Supremacy Clause of the United States Constitution.

265.     Accordingly, Plaintiffs need not comply with the Tobacco Retailers Amendments to continue their lawful business activities in the State of Utah.

266.     Plaintiffs have no adequate remedy at law.

267.     Accordingly, Plaintiffs are entitled to entry of a judgment declaring the Tobacco Retailer Amendments facially unconstitutional and unconstitutional as applied to Plaintiffs, and to an order enjoining the enforcement of the Tobacco Retailer Amendments against Plaintiffs and other similarly situated businesses within the State of Utah.

**FIFTH CAUSE OF ACTION**
**(Violation of the Free Speech Clause of the First Amendment to the**
**United States Constitution)**

268.     Plaintiffs restate and reincorporate, as though fully set forth herein, the allegations contained in each of the paragraphs above.

269.     Tobacco and e-cigarette consumption is lawful for adults, and as such, the tobacco industry has a "protected interest in communicating information about its products" and "adult customers have an interest in receiving that information." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 636, 571 (2001).

270.     The Tobacco Retailer Amendments Sale Restriction provision, which forbids Tobacco Retailers and Plaintiffs from accurately describing or offering their products for sale to any individual or entity constitutes an unconstitutional regulation of truthful, non-misleading speech—

an infringement of Plaintiffs' free speech rights as guaranteed by the First Amendment to the United States Constitution.

271.    Limitations on commercial speech must, at minimum, directly advance an asserted substantial government interest and must not be more extensive than necessary to serve the government's interest.

272.    It is the Government's burden to show that the regulation will advance its interest "to a material degree" which must be absent "speculation or conjecture," which the State of Utah failed to do in passing the Tobacco Retailer Amendments. *44 Liquormart, Inc. v. R.I.*, 517 U.S. 484, 505, 507 (1996) (plurality op.) (emphasis added) (citations omitted).

273.    The Sale Restriction's limitation on a Tobacco Retailer's ability to offer a product at a sale price, give, or distribute a product for free or at a lower price in conjunction with another purchase or as an advertisement does not directly advance any legitimate government interest.

274.    Further, the Sale Restriction bans the use, distribution, and offer of promotional items meant to increase repeat customers and spread good will in the community, which is an unconstitutional infringement of Plaintiffs' free speech rights as guaranteed by the First Amendment to the United States Constitution.

275.    The Tobacco Retailer Amendments are more restrictive than necessary to accomplish the Legislature's goal.

276.    Under this framework, the Tobacco Retailer Amendments cannot withstand Constitutional muster.

277.    Plaintiffs have no adequate remedy at law.

278.    Accordingly, Plaintiffs are entitled to entry of a judgment declaring the Tobacco Retailer Amendments facially unconstitutional and unconstitutional as applied to Plaintiffs, and to an order enjoining the enforcement of the Tobacco Retailer Amendments against Plaintiffs and other similarly situated businesses within the State of Utah.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in its favor and

1.    Declare that the Tobacco Retailer Amendments is arbitrary, capricious, or otherwise not in accordance with law, and exceeds the government's authority;

2.    Declare that the Tobacco Retailer Amendments establishes restrictions on protected conduct that are vague, overbroad, and lacking in procedural safeguards, in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution;

3.    Grant injunctive relief in accordance with the Motion for Temporary Restraining Order filed herewith;

4.    Award monetary damages to Plaintiffs;

5.    Award Plaintiff its attorney fees and costs; and

6.    Order such other relief as this Court may deem just and proper.

DATED this 16th day of June 2022.

/s/ Trinity Jordan_____
D. Loren Washburn
Trinity Jordan
Jordan E. Westgate

*Attorneys for Plaintiff*

## **VERIFICATION**

Pursuant to Rule 11 and 65 of the Federal Rules of Civil Procedure, the undersigned as Plaintiffs, and having personal knowledge, declare, under criminal penalty of the State of Utah, that the foregoing statements in the Verified Complaint are true and correct to the best of the undersigned's knowledge, information and belief, except for statements that are made upon information, and, in those circumstances, the undersigned believes such statements to be true.

Dated this ___ day of June, 2022.

EXOTIC SMOKE & VAPE

By: _Samer Salih (Jun 15, 2022 11:37 MDT)_
Name:  Samer Salih
Its:  Manger

Dated this ___ day of June, 2022.

HOUSE OF HOOKAH SMOKE SHOP, INC.

By: _M. Irfan (Jun 15, 2022 12:39 MDT)_
Name:  M. Irfan
Its:  Owner

Dated this ___ day of June, 2022.

iVAPE LLC

By: _Grady Mason (Jun 15, 2022 18:35 MDT)_
Name:  Grady Mason
Its:  Gm

Dated this ____ day of June, 2022.

MURRAY VAPES

By: _____
Ahmad Saif (Jun 15, 2022 12:05 MDT)
Name: Ahmad Saif____
Its: Managing member

Dated this ____ day of June, 2022.

SHOP & GIFT ZONE, LLC

By: _____
Sabah Al-Essawi (Jun 15, 2022 14:59 MDT)
Name: Sabah Alessawi
Its: Owner

Dated this ____ day of June, 2022.

SMOKE CITY, INC.

By: _Frederick Santiago Jr_____
Frederick Santiago Jr (Jun 15, 2022 12:34 MDT)
Name: Frederick Santiago, Jr.
Its: President

Dated this ____ day of June, 2022.

SMOKE LAND SLC, LLC

By: _ahmed nasarallah_____
ahmed nasarallah (Jun 15, 2022 16:10 MDT)
Name: Ahmed Nasarallah
Its: Owner

Dated this ___ day of June, 2022.

SMOKER'S CONNECTION LLC

By: _____
Ahmad Alshemary (Jun 15, 2022 17:48 MDT)
Name: Ahmad Alshemary
Its: Owner

Dated this ___ day of June, 2022.

RAJA ENTERPRISES, INC.

By: _____
Muhammed A Raja (Jun 15, 2022 12:35 MDT)
Name: Muhammed A. Raja
Its: Owner

Dated this ___ day of June, 2022.

SMOKERS POINT LLC

By: _____
Ghulam Mustafa (Jun 15, 2022 16:04 MDT)
Name: Ghulam Mustafa
Its: Ghulam Mustafa

Dated this ___ day of June, 2022.

TARAN, INC.

By: _____
Taranjit Singh (Jun 15, 2022 12:08 MDT)
Name: Taranjit Singh
Its: Taranjit singh

Dated this <u>Jun 15, 2</u> day of June, 2022.

WORLD OF VAPES LLC

By: <u>Aydin Ibrahim (Jun 15, 2022 23:21 MDT)</u>

Name: <u>Aydin Ibrahem</u>

Its: <u>Managing member</u>