JONI J. JONES (7562)
KYLE J. KAISER (13924)
Assistant Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, 6th Floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
jonijones@agutah.gov
kkaiser@agutah.gov
*Counsel for Defendants Hon. Spencer J. Cox and Nathan Checketts*

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| EXOTIC SMOKE & VAPE, *et al.* | **STATE DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Plaintiffs, | |
| v. | |
| Hon. SPENCER J. COX, *et al.* | Case No. 2:22-cv-00408-HCN |
| Defendants. | Judge Howard C. Nielsen, Jr. |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................ 2

TABLE OF AUTHORITIES .................................................................. 3

INTRODUCTION .................................................................................. 6

STATEMENT OF FACTS ..................................................................... 8

TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
STANDARD OF REVIEW .................................................................. 10

LEGAL ARGUMENT .......................................................................... 11

   1.   THE VAPE RETAILERS HAVE FAILED TO DEMONSTRATE IRREPARABLE
HARM. .................................................................................................. 11

      1.1   The Vape Retailers' delay in seeking relief undercuts their claims of
irreparable harm. ................................................................................... 12

      1.2   The Vape Retailers cannot show irreparable harm because any harm can
adequately be remedied by money damages from an inverse condemnation
lawsuit. ................................................................................................. 16

   2.   THE VAPE RETAILERS' ALLEGED HARM IS OUTWEIGHED BY THE
PUBLIC'S INTEREST IN PROTECTING CHILDREN FROM THE SERIOUS
HEALTH THREATS OF VAPING....................................................... 23

   3.   THE VAPE RETAILERS ARE UNLIKELY TO SUCCEED ON THE MERITS OF
THEIR TAKINGS CLAIM. ................................................................. 25

CONCLUSION ..................................................................................... 31

WORD COUNT CERTIFICATION ..................................................... 32

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*AARP v. EEOC*,
  226 F. Supp. 3d 7 (D.D.C. Dec. 29, 2016) ................................................................. 14

*Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n,*
  40 F. Supp. 2d 1275 (D. Kan. 1999) ........................................................................ 22

*Andrus v. Allard,*
  444 U.S. 51 (1979) .......................................................................................... 27, 28

*Aposhian v. Barr,*
  958 F.3d 969 (10th Cir. 2020) ................................................................................ 20

*Baptiste v. Kennealy,*
  490 F. Supp. 3d 353 (D. Mass 2020) ...................................................................... 18

*California Hosp. Ass'n v. Maxwell-Jolly,*
  776 F. Supp. 2d 1129 (E.D. Cal. 2011) ................................................................... 15

*Cedar Point Nursery v. Hassid,*
  141 S. Ct. 2063, (2021) ................................................................................... 26, 27

*Colon-Marrero v. Conty-Perez,*
  703 F.3d 134 (1st Cir. 2012) ................................................................................. 14

*Crookston v. Johnson,*
  841 F.3d 396 (6th Cir. 2016) ........................................................................... 14, 15

*Culinary Studios, Inc. v. Newsom,*
  517 F. Supp. 3d 1042 (E.D. Cal. 2021) ................................................................... 19

*Daughtery Speedway, Inc. v. Freeland,*
  520 F. Supp. 3d 1070 (D. Ind. 2021) ...................................................................... 18

*Fish v. Kobach,*
  840 F.3d 710 (10th Cir. 2016) ............................................................................... 13

*Goodpaster v. City of Indianapolis,*
  736 F.3d 1060 (7th Cir. 2013) ............................................................................... 29

*Greater Yellowstone Coal. v. Flowers,*
  321 F.3d 1250 (10th Cir. 2003) ............................................................................. 10

*GTE Corp. v. Williams,*
  731 F.2d 676 (10th Cir. 1984) ............................................................................... 13

*Harmon v. City of Norman, Oklahoma,*
  981 F.3d 1141 (10th Cir. 2020) ............................................................................. 26

*Heideman v. South Salt Lake City,*
  348 F.3d 1182 (10th Cir. 2003) ............................................................................. 11

*Jevons v. Inslee,*
  561 F. Supp. 3d 1082 (E.D. Wash. 2021) ............................................................... 17

*Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*,
  31 F.3d 1536 (10th Cir. 1994) ................................................................. 13

*Knick v. Township of Scott., Pa.*,
  139 S. Ct. 2162 (2019) ............................................................................ 18

*Laborers' Int'l Union of N. Am. Local 860 v. Neff*,
  29 F.4th 325 (6th Cir. 2022) ................................................................... 18

*LaRouche v. Burgio*,
  594 F. Supp. 614 (D.N.J. 1984) .............................................................. 14

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ................................................................................ 11

*Morales v. Lanier*,
  No. CV 18-5657-GW(PJWx), 2018 WL 6177231 (C.D. Cal. July 2, 2018) ................. 14

*N.C. State Bd. of Elections*,
  No. 1:20-CCV-876, 2020 WL 6488704 n.5 (M.D.N.C. Nov. 4, 2020) ......................... 12

*N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*,
  854 F.3d 1236 (10th Cir. 2017) ..................................................... 11, 12, 13

*Newdow v. Bush,*
  355 F. Supp. 2d 265 (D.D.C. 2005) ......................................................... 12

*Oakland Tribune, Inc. v. Chronicle Pub'g Co.*,
  762 F.2d 1374 (9th Cir. 1985) ................................................................. 13

*Otero Savings & Loan Ass'n v. Federal Reserve Bank of Kansas City*,
  665 F.2d 275 (10th Cir. 1981) ........................................................... 20, 21

*Penn Central Transportation Co. v. New York City*,
  438 U.S. 104 (1978) .................................................................. 26, 27, 29, 30

*Pharm. Res. & Mfrs. of Am. v. Williams*,
  525 F. Supp. 3d 946 (D. Minn. 2021) ...................................................... 18

*Pietch v. Ward Cnty.*,
  991 F.3d 907 (8th Cir. 2021) ................................................................... 17

*Rancho de Calistoga v. City of Calistoga*,
  800 F.3d 1083 (9th Cir. 2015) ................................................................. 29

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) ............................................................... 13

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ................................................................................ 17

*Salt Lake Tribune Pub'g Co. v. AT&T Corp.*,
  320 F.3d 1081 (10th Cir. 2003) ............................................................... 20

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  239 F. Supp. 3d 77 (D.D.C. 2017) .......................................................... 12

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*,
  560 U.S. 702 ........................................................................................... 17

*Stuber v. Lucky's Auto Credit, LLC*,
  478 F. Supp. 3d 1205 (D. Utah 2020) ...................................................... 10

4

*Tri-State Generation & Transmission Association v. Shoshone River Power, Inc.,*
  805 F.2d 351 (10th Cir. 1986) ................................................................. 21
*Utah Gospel Mission v. Salt Lake City Corp.,*
  316 F. Supp. 2d 1201 (D. Utah 2004) ...................................................... 15
*Vasquez v. Foxx,*
  895 F.3d 515 (7th Cir. 2018) .................................................... 28, 29, 30
*Williams v. Utah Dep't of,*
  *Corrs.,* 928 F.3d 1209 (10th Cir. 2019) ..................................................... 18
Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,
  473 U.S. 172 (1985) .................................................................................. 18
*Wine & Spirits Retailers, Inc. v. Rhode Island,*
  364 F. Supp. 2d 172 (D.R.I. 2005) ...................................................... 12, 14
*Yur-Mar, L.L.C. v. Jefferson Par. Council,*
  451 F. App'x 397 (5th Cir. 2011) ........................................................ 28, 29

**State Cases**

*Am. W. Bank Members, L.C. v. State,*
  2014 UT 49, 342 P.3d 224 ......................................................................... 21
*Gardner v. Bd. of Cnty. Comm'rs of Wasatch Cnty.,*
  2008 UT 6, 178 P.3d 893 ............................................................................ 18
*Utah Res. Int'l, Inc. v. Mark Techs., Corp.,*
  2014 UT 59, 342 P.3d 761 ......................................................................... 18

**State Statutes**

Utah Code §§ 10-8-41.6, 17-50-337, and 26-62-202 ............................ 7, 8, 28
Utah Code §§ 63G-7-301(2)(d), 63G-7-203(1) ........................................... 18
TOBACCO RETAILER AMENDMENTS, 2021 Utah Laws Ch. 348 (S.B. 189) ................... 9

**Other Authorities**

11A Charles Alan Wright, et al., *Federal Practice & Procedure* § 2946 (Supp. 2022) ....... 11
DUCivR 7-1(a)(4) ............................................................................................. 31

# INTRODUCTION

Defendants Spencer J. Cox, Governor of Utah, and Nathan Checketts, Executive Director of the Utah Department of Health (the "State Defendants") oppose the Exped[ited] Motion for Temporary Restraining Order and Preliminary Injunction[1] filed by Plaintiffs Exotic Smoke & Vape, House of Hookah Smoke Shop, Inc., iVape LLC, Murray Vapes LLC, Raja Enterprises, Inc., Shop & Gift Zone, LLC, Smoke City, Inc., Smoke Land SLC, LLC, Smoker's Connection LLC, Smokers Point LLC, Taran, Inc., and World of Vapes, LLC (the "Vape Retailers").

The Vape Retailers each admit to operating Retail Tobacco Specialty Businesses, as defined by Utah law. They each admit that flavored electronic cigarette products represent a "bulk of their sales."[2]  These products are often sold and illegally used by school-aged children, so much so that FDA Commissioners called youth e-cigarette use an "epidemic."[3] They admit to selling these products

---

[1] Pls.' Exped[ited] Mot. for TRO & Prelim, Inj. ("Pls.' Mot.") (doc. 3).

[2] Pls.' Verified Compl. for Declaratory & Inj. Relief ("Pls.' Compl.") (doc. 2) ¶ 220.

[3] *See* FDA News Release, "FDA takes new steps to address the epidemic of youth e-cigarette use, including a historic action against more than 1,300 retailers and 5 major manufacturers for their roles perpetuating youth access," (Sept. 11, 2018), *available at* https://www.fda.gov/news-events/press-announcements/fda-takes-new-steps-address-epidemic-youth-e-cigarette-use-including-historic-action-against-more; Testimony of Dr. Janet Woodcock, M.D. before the House Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, "An Epidemic Continues: Youth Vaping in America," (June 23, 2021), *available at* https://www.fda.gov/news-events/congressional-testimony/epidemic-continues-youth-vaping-america-06232021.

within 1,000 feet of a school, which will be prohibited on July 1 by S.B. 189, a law passed in 2021.  They claim Utah's laws, enacted to protect Utah children from having easy access to flavored e-cigarettes and other vaping products, create an unconstitutional a regulatory taking (among other things). And they seek an injunction, just two weeks before the law takes effect, prohibiting its implementation, based solely on their takings claim.

The Vape Retailers' motion should be snuffed out.  They cannot meet their burden on any of the four preliminary injunction elements.

As a threshold matter, they cannot show that they would suffer irreparable harm absent the injunction because, even though they knew about the governing law for fifteen months, they waited until fifteen days before its effective date to file their TRO.  This degree of self-inflicted injury undermines any claim of irreparable harm.  Further, the Vape Retailers have not met their burden to show irreparable harm because they have a remedy at law.  The U.S. Supreme Court, and many lower courts, have held that injunctive relief is unavailable under the Takings Clause if a state offers an inverse condemnation cause of action. And Utah does.  Finally, the Vape Retailers have not provided any evidence to support their claim of loss of "goodwill" other than conclusory statements and speculation. This cannot support a request for injunctive relief.

Second, the Vape Retailers cannot meet their burden to show that the balance of harms tips in their favor, or that the injunction is in the public interest. As the Vape Retailers have noted, the Legislature has been actively working for years to ensure that minors do not have easy access to e-cigarettes and flavored vape products.  It has extended the time for compliance with the law, yet the Vape Retailers have refused.  And the public has a strong interest in curbing the epidemic of youth e-cigarette use.

Finally, the Vape Retailers cannot meet their burden to show likelihood of success on the merits of their Fifth Amendment Takings claim.  Using the *Penn Central* balancing test, the Vape Retailers' claim fails.   Accordingly, the Court should deny the motion.

## STATEMENT OF FACTS

1.     The Vape Retailers are a selection of business entities licensed as Retail Tobacco Specialty Businesses under Utah Code §§ 10-8-41.6, 17-50-337, and 26-62-202.[4] A "bulk of" the Vape Retailers' sales come from sales of flavored electronic cigarette products, which only they as Retail Tobacco Specialty Businesses can sell.[5]

---

[4] Pls.' Compl. ¶¶ 1, 9–19.  The Vape Retailers' Complaint is verified, and they rely on the statements in the Complaint to support their Motion. Pls.' Mot. ¶ 9.
[5] Pls.' Compl. ¶¶ 64, 70, 220.

2.  After other repeated amendments to tobacco licensing laws,[6] the Utah Legislature passed Senate Bill 189, which prohibited Retail Tobacco Specialty Businesses from being located within 1,000 feet of a public or private kindergarten, elementary, middle, junior high, or high school.  *See* TOBACCO RETAILER AMENDMENTS, 2021 Utah Laws Ch. 348 (S.B. 189) §§ 1–2 (amending Utah Code §§ 10-8-41.6, 17-50-333), *available at* https://le.utah.gov/~2021/bills/static/SB0189.html. The bill was signed by the Governor on March 21, 2021, with an effective date of May 5, 2021.  *Id.*

3.  The purpose of S.B. 189, and the other tobacco regulations, is to discourage e-cigarette use among school-aged children, which has been called an "epidemic" by public health officials.[7]

4.  As of July 1, 2022, the Vape Retailers will no longer be able to operate as Retail Tobacco Specialty Businesses in their current location.[8] All of the Vape Retailers have a lease that terminates no earlier than 2024,[9] except for World of Vapes, which owns its building.[10]

---

[6] State Defendants do not dispute the amendment of the various laws outlined by the Vape Defendants in ¶¶ 36–82 of the Complaint.  However, State Defendants oppose any characterizations of any of the legislation not existing in the plain text or legislative history of those statutes and bills.

[7] See sources in notes 3, 23, 24, 25, 26, 27, 28.

[8] Pls.' Compl. ¶ 212.

[9] Pls.' Compl. ¶¶ 95, 106, 115, 126, 137, 147, 158, 169, 180, 191, 202.

[10] Pls.' Compl. ¶ 211.

5.     The Vape Retailers allege loss of revenue and goodwill if S.B. 189 takes effect, but they provide no information about their customer base, sales, transferability of their lease, market condition analysis for other suitable locations, or any other specific calculation of damages or proof of why damages might be impossible to calculate.[11]

6.     The Vape Retailers did not file their TRO motion until June 16, 2022, fifteen days before S.B. 189's effective date.[12]

### TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION STANDARD OF REVIEW

The Vape Retailers seek a temporary restraining order and preliminary injunction directing State Defendants not to enforce the Tobacco Retailer Amendments that require Retail Tobacco Specialty Businesses located within 1,000 feet of a public or private K-12 school to relocate by July 1, 2022.

The requirements for a temporary restraining order and a preliminary injunction are the same. *Stuber v. Lucky's Auto Credit, LLC*, 478 F. Supp. 3d 1205, 1208 (D. Utah 2020). In both cases, however, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). This extraordinary and drastic remedy

---

[11] *See* Pls.' Compl. ¶¶ 85–211; *cf.* Pls.' Mot. at 8–13 (arguing economic loss and goodwill without citing to any factual support).
[12] See Pls.' Mot. at 1.

"should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (internal quotation marks and citation omitted).

Before a court may enter a preliminary injunction or temporary restraining order, the moving party must establish (1) irreparable harm unless the injunction is issued; (2) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; (3) that the injunction, if issued, will not adversely affect the public interest; and (4) there is a substantial likelihood of prevailing on the merits. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). The Vape Retailers' request for temporary restraining order and preliminary injunction does not satisfy any of these required elements.

## LEGAL ARGUMENT

### 1. THE VAPE RETAILERS HAVE FAILED TO DEMONSTRATE IRREPARABLE HARM.

The first of the four elements—whether the Vape Retailers can demonstrate irreparable harm— is a threshold inquiry that ends the analysis if it is not established. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, and therefore the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017)

(cleaned up). Irreparable harm "must be both certain and great." *Id.* (citations and quotations omitted).

The Vape Retailers have not demonstrated irreparable harm for two reasons. First, they have unreasonably delayed in seeking relief. Second, to the extent that the enforcement of the statute would actually cause them harm, the harm would be purely in the form of economic harm compensable in an inverse condemnation proceeding. All of their takings (and takings-adjacent) claims cannot support the Vape Retailers' request for a preliminary injunction.

### 1.1 The Vape Retailers' delay in seeking relief undercuts their claims of irreparable harm.

The Vape Retailers' motion should be denied because any irreparable harm caused when the statute goes into effect is due to the Vape Retailers' delay.[13] To satisfy the element of irreparable harm, the harm "must be likely to occur before

---

[13] Courts analyze a plaintiff's delay under various factors when determining whether an injunction should issue. Some courts consider a plaintiff's delay when balancing the harms to each party. *See, e.g., Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005); *Wine & Spirits Retailers, Inc. v. Rhode Island*, 364 F. Supp. 2d 172, 182 (D.R.I. 2005). Others analyze delay under the equitable doctrine of laches. *See Standing Rock Sioux Tribe v. U.S. Army Corps. of Eng'rs*, 239 F. Supp. 3d 77, 84 (D.D.C. 2017) (analyzing delay and laches as a threshold before reaching the four-factor preliminary injunction standard). However, "delay has [also] been considered in the inquiry of irreparable harm." *N.C. A Philip Randolph Instit. v. N.C. State Bd. of Elections*, No. 1:20-CCV-876, 2020 WL 6488704, at * 8 n.5 (M.D.N.C. Nov. 4, 2020) (unpublished) (citing cases). Considering the importance of irreparable harm, the fact that Tenth Circuit cases seem to indicate that unexcused delay may undermine a plaintiff's claim of irreparable harm, and the fact that courts will examine delay as a threshold issue under other elements, *see Standing Rock Sioux Tribe*, 239 F. Supp. 3d at 84, State Defendants address the issue of delay here.

the district court rules on the merits." *N.M. Dep't of Game & Fish*, 854 F.3d at 1250 (citations and quotations omitted). A plaintiff's delay in seeking preliminary injunctive relief "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984); *accord Oakland Tribune, Inc. v. Chronicle Pub'g Co.*, 762 F.2d 1374, 1378 (9th Cir. 1985); 11A Charles Alan Wright, et al., *Federal Practice & Procedure* § 2946 (Supp. 2022).

An excused delay may not necessarily foreclose injunctive relief. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009). But a delay will "undermine" such a claim unless the plaintiff has an excuse or a justification for the delay and the defendants have not been disadvantaged. *See Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1544 (10th Cir. 1994); *cf. Fish v. Kobach*, 840 F.3d 710, 754 (10th Cir. 2016) (refusing to overturn district court's injunction solely on delay grounds, without proof of prejudice or harm inflicted by the plaintiffs themselves).

Courts have refused to grant plaintiffs injunctive relief challenging government action when plaintiffs wait too long on the front end—when they knew about the likelihood of harm from the government action but did not act for

months or years after a statute's enactment.[14] And courts have refused to grant

relief when plaintiffs delayed on the back end—when they wait until the last

minute before the effective date to challenge government action.[15]

In this case, the Vape Retailers unreasonably delayed both on the front end

and on the back end. Senate Bill 189, which extended the effective date of

previous legislation and allowed for the existing specialty tobacco businesses to

relocate, was signed into law March 17, 2021. The Vape Retailers took no action

on the law in 2021. They took no action after the end of the legislative session on

March 4, 2022, when they knew that there was no further legislation that would

---

[14] *AARP v. EEOC*, 226 F. Supp. 3d 7, 22 (D.D.C. Dec. 29, 2016) (concluding undue delay
undermined irreparable harm when new regulation was promulgated in May 2016,
effective in July 2016 and "applicable" on January 1, 2017, yet plaintiff waited until
October 2016 to file suit, and concluding that plaintiff's "actions further undermine its
argument that an injunction is urgently needed to prevent irreparable harm"); *Wine &
Spirits Retailers, Inc. v. Rhode Island*, 364 F. Supp. 2d 172, 182 (D.R.I. 2005); (refusing to
enjoin a law that was adopted July 8, 2004, effective April 1, 2005, but a preliminary
injunction was not sought until January 18, 2005); *LaRouche v. Burgio*, 594 F. Supp.
614, 616–17 (D.N.J. 1984) (concluding that third-party candidates, who knew about
constitutional issue with New Jersey ballot access in April 1983, but waited until
September 1984 to challenge law for November 1984 election, had unreasonably
delayed and were not entitled to injunctive relief).
[15] *See Colon-Marrero v. Conty-Perez*, 703 F.3d 134, 139 (1st Cir. 2012) (refusing to enjoin
"long-standing election procedures" eighteen days before the general election);
*Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (granting stay of order
preliminarily enjoining Michigan's "ballot selfie" law that was sought six weeks before
the election, even though the challenged law had been enforced for years); *Morales v.
Lanier*, No. CV 18-5657-GW(PJWx), 2018 WL 6177231, at * 2 (C.D. Cal. July 2, 2018)
(unpublished) (refusing to enter ex parte TRO because, among other reasons, plaintiffs
failed to demonstrate irreparable harm because they did not file their TRO until two days
before a statute went into effect, and plaintiffs knew about the effective date of the
statute for twenty-one months).

have affected their businesses. They did not even take action in May, the "effective date" of the legislation. Instead, they filed this Motion on June 16 and served it on June 17, two weeks before the effective date of S.B. 189 and on the day before a state and federal holiday weekend.[16] This delay deprived Defendants, including the State Defendants, of an opportunity to fully and thoroughly brief the Vape Retailers' legal claims, and for the court to have an ample opportunity to consider and rule on the merits before the statute is enacted. The Vape Retailers have provided no reason or excuse for the delay, and the claimed irreparable harm is because of the Vape Retailers' litigation choices.

"Timing is everything." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016). And in this case, the Vape Retailers' timing is off. Their year-and-a-half delay and last-minute filing "belie[] any irreparable injury to their rights." *Utah Gospel Mission v. Salt Lake City Corp*., 316 F. Supp. 2d 1201, 1221 (D. Utah 2004). Accordingly, the Court should deny the motion.

---

[16] Plaintiffs allege that they received enforcement letters from the departments of health from Salt Lake and Utah counties "notifying them" of the deadline.  Pls.' Compl. ¶ 5. They do not assert when this letter came, nor do they assert that the letter provided them notice of anything that they did not already know. *Cf. California Hosp. Ass'n v. Maxwell-Jolly,* 776 F. Supp. 2d 1129, 1157–58 (E.D. Cal. 2011) (calculating plaintiff's diligence by starting on the day the statute was "implemented" by an administrative agency through its posting of "interpretive guidance").

### 1.2    The Vape Retailers cannot show irreparable harm because any harm can adequately be remedied by money damages from an inverse condemnation lawsuit.

The Vape Retailers' motion should also be denied because the Vape Retailers have an adequate remedy at law—an inverse condemnation claim—and thus cannot show irreparable harm. In fact, the United States Supreme Court, and courts throughout the country, have held that equitable relief (and any functional equivalent) is unavailable for a takings claim (and any functional equivalent) when an adverse condemnation claim is available. Utah allows inverse condemnation claims, and even waives governmental immunity for them.  This precedent should, itself, foreclose injunctive relief.

But even if the Court ignores the relevant precedent prohibiting injunctions springing from takings claims, the Vape Retailers still have not demonstrated irreparable harm.  The Vape Retailers' complaint is nearly exclusively about money damages, which can be compensated if an inverse condemnation claim is proven.  Their evidence of irreparable harm is loss of "community goodwill." This type of goodwill is not sufficient to support a claim for injunctive relief in takings cases, the Vape Retailers' cases are distinguishable, and the Vape Retailers have not presented any evidence supporting their claim.

### 1.2.1  Injunctive relief is barred in takings claims.

In this case, the principal claim is that the "State has done nothing to pay the Vape Retailers' 'just compensation' for its regulatory taking and has instead

16

invited this litigation due to the State's failure to comply with its constitutional mandate."[17] The Vape Retailers move for a temporary restraining order and preliminary injunction on their takings claim only, claiming that they "are likely to succeed on the merits of their Fifth Amendment claim."[18] But injunctive relief is barred on takings claims.[19]

"Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984).[20] "It makes perfect sense that the remedy for a Takings Clause violation is only damages, as the Clause does not proscribe the taking of property; it proscribes taking without just compensation." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 741 (Kennedy, J. concurring in part) (quotations omitted). Because "the federal and

---

[17] Pls.' Compl. at 4–5.
[18] Pls.' Mot. at 6–11 (arguing only the merits of the takings claim).
[19] Even though Plaintiffs seek an injunction on the basis of their takings claim, the bar applies to claims that are the functional equivalent of takings claims when a plaintiff attempts to "recast" a takings claim under another constitutional provision, such as a violation of due process. *Pietch v. Ward Cnty.*, 991 F.3d 907, 909 (8th Cir. 2021) (concluding that *Knick's* bar on injunctive relief for takings claims applies to a request for injunctive relief to enjoin a county's requirement to dedicate portions of property for public rights-of-way). And, an injunction or any "functional equivalent" of an injunction (like a request for declaratory judgment) is "inappropriate." *Jevons v. Inslee*, 561 F. Supp. 3d 1082, 1102–03 (E.D. Wash. 2021).
[20] "Duly authorized by law" means subject to enacted statute or regulation, such as the statute at issue in this case. *Id.* n.19.

nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoying the government's action effecting a taking." *Knick v. Township of Scott., Pa*., 139 S. Ct. 2162, 2176–77 (2019).[21]

Other courts have relied on the *Knick* language in dismissing claims for injunctive and declaratory relief when state inverse condemnation proceedings provide a remedy. *Pharm. Res. & Mfrs. of Am. v. Williams*, 525 F. Supp. 3d 946, 952 (D. Minn. 2021), *appeal filed* (March 30, 2021); *Daughtery Speedway, Inc. v. Freeland*, 520 F. Supp. 3d 1070, 1075–76 (D. Ind. 2021) (dismissing claim for injunctive relief based on a Fifth Amendment takings claim challenging COVID-19 closure orders); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 391 (D. Mass 2020) (COVID-19 eviction moratorium). And this Court should do so here.

---

[21] *Knick* overruled the requirement that takings claimants must first exhaust state court remedies to state a valid takings claim under the Fifth Amendment to the U.S. Constitution. *Knick*, 139 S. Ct. at 2179; *see Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). State Defendants are not arguing that Plaintiffs' Fifth Amendment takings claim is precluded in its totality by their failure to seek relief under state law. But their request for injunctive relief is precluded. "The availability of a legal remedy [under state law] does not on its own bar the damages claims. But it does preclude an injunction." *Laborers' Int'l Union of N. Am. Local 860 v. Neff*, 29 F.4th 325, 335 (6th Cir. 2022). This is also a separate issue from whether the Eleventh Amendment substantively bars a Fifth Amendment takings claim against the State or a state official. *See Williams v. Utah Dep't of Corrs*., 928 F.3d 1209, 1214 (10th Cir. 2019).

In Utah, "[i]f private property is taken or damaged for public use absent formal use of Utah's eminent domain power, a property owner may bring an inverse condemnation action under article I, section 22 [of the Utah Constitution] to recover the value of the property." *Gardner v. Bd. of Cnty. Comm'rs of Wasatch Cnty.*, 2008 UT 6, ¶ 28, 178 P.3d 893, 903, *disavowed on other grounds by Utah Res. Int'l, Inc. v. Mark Techs., Corp.*, 2014 UT 59, ¶ 33, 342 P.3d 761, 770 (citations and quotations omitted). The Governmental Immunity Act of Utah specifically waives immunity (and other statutory requirements) for inverse condemnation claims. Utah Code §§ 63G-7-301(2)(d), 63G-7-203(1).

Because "there is no indication or suggestion that [Utah] does not provide just compensation to property owners for a taking, particularly given the existence of [article I, section 22], … the takings claim cannot form the basis for equitable relief against the State [Defendants]." *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1064–65 (E.D. Cal. 2021). "This conclusion forecloses operation of *Ex parte Young* with respect to the State officials" as well. *Id.* Accordingly, the Vape Retailers' relief is foreclosed, and the motion should be denied.

### 1.2.2  The Vape Retailers have not shown irreparable harm.

Notwithstanding the Supreme Court's bar of injunctive relief in takings claims, the Vape Retailers still have not shown that they will be irreparably harmed absent the injunction. It is the plaintiff's burden to demonstrate

irreparable harm. *Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020).

Irreparable harm is "harm that cannot be undone, such as by an award of

compensatory damages or otherwise." *Salt Lake Tribune Pub'g Co. v. AT&T Corp.*,

320 F.3d 1081, 1105 (10th Cir. 2003). "[A]ctionable business losses … [that] can

be remedied by money damages" normally do not constitute "irreparable" harm

sufficient to support injunctive relief. *Id.*

    In this case, the Vape Retailers' harms are almost entirely financial. The

Vape Retailers allege that they "(a) are incurring financial damage; (b) will

continue to incur financial damage; and (c) will be divested of a substantial

portion of their income, business interests, and community goodwill …."[22] It is

the last phrase—"community goodwill"—on which the Vape Retailers hang their

hat on irreparable harm. But that peg is too short, and the Vape Retailers' facts

too thin, to support such a massive expansion of the Court's equitable powers.

    The Vape Retailers have not cited any cases in which courts have concluded

that a business's goodwill supports a finding of "irreparable harm" in a takings

case. And their two cases they cite, from different contexts, are easily

distinguishable. *Otero Savings & Loan Ass'n v. Federal Reserve Bank of Kansas City*,

665 F.2d 275, 278 (10th Cir. 1981), involved the FDIC's refusal to process a

---

[22] Pls.' Compl. ¶ 35.

saving and loan association's checks through a clearinghouse. The court determined that the trial court did not abuse discretion in granting the preliminary injunction because alternative clearinghouse procedures were not realistically available, with the resulting interruption of services to 19,000 customers that would cause "severe confusion of processes and loss of good will." *Id*. It was not a takings case, involved a federal financial regulation that would affect the ability of a saving and loan association's customers to engage in banking services, and would cause significant confusion. "Good will" is mentioned only as a parting thought in the chaos that a regulation would have to citizens' abilities to access and use the money in the savings and loan.

*Tri-State Generation & Transmission Association v. Shoshone River Power, Inc., 805 F.2d 351, 356 (10th Cir. 1986)*, involved the sale of assets of a rural electric co-op. In that case, if the injunction were not issued, its assets would be sold, regardless of whether it prevailed on the merits of its claim. *Id.* Recognizing that a threat to "business viability may constitute irreparable harm," the plaintiff had no protection against the loss of its business "while the litigation progresses" and would be left with an "empty victory" because plaintiff's assets would be owned by someone else. *Id.* at 356. In this case, the Vape Retailers would have a remedy—the remedy for money damages caused by a taking (if one is proved). The Vape Retailers would not have an "empty victory" but one that would actually

logically and fully compensate them for any constitutional violation. Accordingly, the Vape Retailers' case law does not support their claimed irreparable harm.

Nor do the Vape Retailers' facts support their claim of irreparable harm. The Vape Retailers have the burden to prove their irreparable harm, including loss of goodwill. The Vape Retailers' complaint is verified, but the allegations about goodwill are not. Nowhere in the complaint is any statement by any plaintiff about the amount invested in goodwill, how moving or modifying their business would affect their bottom line, any analysis of whether their business would be likely to close, or any other proof related to goodwill. And when the Vape Retailers' allegations about irreparable harm and loss of goodwill are conclusory, courts deny requests for preliminary relief. *See Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n*, 40 F. Supp. 2d 1275, 1282 (D. Kan. 1999) (refusing to grant preliminary injunction motion when a party provides "speculative" testimony about diminution of intellectual property, reputation injuries, and loss of sales "without factual support"); *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 33, 342 P.3d 224, 236 (affirming dismissal of takings claim where plaintiff alleged only that "Plaintiff and its Members have lost all of the ownership, goodwill, equity, capital, and investments that they made in the Bank).

In sum, both legally and factually, the Vape Retailers cannot demonstrate irreparable harm. As such, the Court may deny the preliminary injunction.

2. **THE VAPE RETAILERS' ALLEGED HARM IS OUTWEIGHED BY THE PUBLIC'S INTEREST IN PROTECTING CHILDREN FROM THE SERIOUS HEALTH THREATS OF VAPING.**

The second and third elements necessary for preliminary injunction—that the threatened injury outweighs the harm that the preliminary injunction may cause the State Defendants and that the injunction, if issued, will not adversely affect the public interest—weigh in favor of denying the injunctive relief sought. The government and the public's interest in protecting children and teens from vaping's known harms outweighs any damage the Vape Retailers may suffer when S.B. 189 goes into effect.

Vaping poses serious harm to kids, who are especially vulnerable to addiction and adverse health effects from vaping products. Most e-cigarettes contain nicotine.[23]  For example, JUUL, which is the number-one selling e-cigarette in the U.S., contains in one pod the amount of nicotine found in an entire pack (20) of cigarettes.[24] As the Surgeon General has explained, nicotine in e-cigarettes affects kids more dramatically than adults, increasing the chance they

---

[23] Surgeon General's Advisory on E-cigarette Use among Youth (December 2018), https://www.cdc.gov/tobacco/basic_information/e-cigarettes/surgeon-general-advisory/index.html#:~:text=In%20addition%20to%20nicotine%2C%20the,inhaled%20deeply%20into%20the%20lungs.

[24] https://www.cdc.gov/tobacco/basic_information/e-cigarettes/Quick-Facts-on-the-Risks-of-E-cigarettes-for-Kids-Teens-and-Young-Adults.html?s_cid=OSH_emg_GL0001&gclid=CjwKCAjwtcCVBhA0EiwAT1fY7_dkMN_TPu5iBolTMctRRsY0e3iVpBTMy-_C-oomFwP0m_F0MQVnChoCa1UQAvD_BwE#what-is-juul.

will become addicted: "Until about age 25, the brain is still growing. Each time a new memory is created, or a new skill is learned, stronger connections—or synapses—are built between brain cells. Young people's brains build synapses faster than adult brains. Because addiction is a form of learning, adolescents can get addicted more easily than adults."[25] Nicotine causes not only addiction in kids, but also reduced impulse control, deficits in attention and cognition, and mood disorders.[26]

And there is a strong correlation between vaping and ease of access to vape products. Research shows vape shop density around schools is associated with an increased likelihood of e-cigarette use among teens.[27]  As one recent study explained:

> Having tobacco outlets close to schools is a proven effective strategy employed by the traditional tobacco industry to recruit young smokers, and our findings suggest that the e-cigarette industry is adopting this tactic. Doing so might be yielding results, given the

---

[25] *Know the Risks: E-Cigarettes & Young People* (2019), https://e-cigarettes.surgeongeneral.gov

[26] Menglu Yuan et al., *Nicotine and the Adolescent Brain*, 593 J. of Physiology 3397 (2015), www.ncbi.nlm.nig.gov/pmc/articles/PMC4560573/:; U.S. Surgeon General and U.S. Centers for Disease Control & Prevention, Office on Smoking and Health, *Know the Risks: E-Cigarettes & Young People* (2019), https://e-cigarettes.surgeongeneral.gov/.

[27] Giovenco D.P., Casseus M., Duncan D.T., Coups E.J., Lewis M.J., Delnevo C.D., *Association between electronic cigarette marketing near schools and e-cigarette use among youth*, J. Adolesc. Health. 2016;59(6):627–634, https://pubmed.ncbi.nlm.nih.gov/27720358; Bostean G., Crespi C.M., Vorapharuek P., McCarthy W.J., *E-cigarette use among students and e-cigarette specialty retailer presence near schools*, Health Place. 2016;42:129–136, https://pubmed.ncbi.nlm.nih.gov/27770669 .

positive association between vape shop proximity to schools and adolescent e-cigarette use, the remarkably high prevalence of e-cigarette use among middle and high schoolers, and studies identifying vape shops as a leading source of adolescents' procurement of e-cigarettes.[28]

Given the serious health threat to children and teens that vaping poses, and the documented correlation between proximity of vaping shops to schools with increased vaping among adolescents, the public interest favors prohibiting vape shops from operating near schools.

The Vape Retailers may lose money if they are forced to relocate, but as set out in Section 1, this is not enough to show irreparable harm. There can be no question that the public's interest in preventing children and teens from becoming addicted to e-cigarettes outweighs the Vape Retailers' interests in making money by exploiting adolescents' particular vulnerability to vaping.

### 3. THE VAPE RETAILERS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR TAKINGS CLAIM.

The Vape Retailers seek injunctive relief solely on the grounds that they will be successful on the merits of their Fifth Amendment takings claim.[29] As an initial matter, the Vape Retailers wrongly argue that they need only allege a "prima facie

---

[28] Chido-Amajuoyi OG, Ozigbu CE, Zhang K., *School proximity and census tract correlates of e-cigarette specialty retail outlets (vape shops) in central Texas*, Preventative Medicine Reports 2020 Mar 23;18:101079, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7115100/#b0045.

[29] Pls.' Mot. at 6–13.

case" of regulatory taking to satisfy the substantial-likelihood-of-prevailing prong. *Id.* at 7. Instead, the Vape Retailers must "make a prima facie case showing a *reasonable probability* that they will ultimately be entitled to the relief sought." *Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1146 (10th Cir. 2020) (cleaned up) (emphasis added). Here, the Vape Retailers have failed to make such a showing.

The Takings Clause of the Fifth Amendment requires the government to provide just compensation to an owner when it physically acquires private property for a public use. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071, (2021). While the Takings Clause was limited to physical appropriations of property before the 20th century, the Supreme Court has since established that regulation of property that "goes too far [] will be recognized as a taking." *Id*. at 2071–72. Thus, regulations that impose permanent physical invasions or deprive an owner of all economically beneficial use of her property are *per se* takings. *Id*. at 2070. And all other regulatory actions are evaluated under the Supreme Court's multifactor balancing test set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). *Id.*

Under *Penn Central*, a court applies a flexible approach for assessing whether a use restriction effects a taking by "balancing factors such as the economic impact of the regulation, its interference with reasonable investment-

backed expectations, and the character of the government action." *Cedar Point,*
*141 S. Ct. at 2072* (citing *Penn Central,* 438 U.S. at 124). The Vape Retailers
cannot show a substantial likelihood that balance of these factors weighs in favor
of a regulatory taking.

*First,* the economic impact of the regulation does not weigh in favor of a
regulatory taking. A regulation does not amount to a taking simply because the
property owner can no longer make the "most beneficial use of the property."
*Penn Central,* 438 U.S. at 125. And, "in instances in which a state tribunal
reasonably concluded that the health, safety, morals, or general welfare would be
promoted by prohibiting particular contemplated uses of land, the Supreme Court
has upheld land-use regulations that destroyed or adversely affected recognized
real property interests." *Id.* (cleaned up).

The Vaping Retailers complain of economic damages as they will have to
breach their lease agreements, search for new shop locations, and hire and train
new employees.[30] But denial of a traditional property right does not necessarily
amount to a taking. *Andrus v. Allard,* 444 U.S. 51, 65–66 (1979),  involved a law
preventing the sale of certain artifacts. The Supreme Court held that the
regulation was not a taking because the law did not compel *surrender* of the

_____

[30] Pls.' Mot. at 8–9.

artifacts and the owners could still derive some economic benefit by "exhibit[ing] the artifacts for an admissions charge." *Id.* at 66. Similarly, the Vaping Retailer have not been deprived of all economic benefit as they could sell non-tobacco products in their shop locations.

In *Vasquez v. Foxx*, 895 F.3d 515, 523–24 (7th Cir. 2018), plaintiffs challenged an Illinois residency statute that required a 500-foot buffer zone for child sex offenders from day cares or group day cares. The Seventh Circuit found no regulatory taking, noting that the economic impact on plaintiffs was "minimal in comparison to *Andrus*." *Id.* The court noted that while plaintiffs could not reside within the 500-feet zone, many others could, "leaving open a broad market to sell or sublease their residences at full market value." *Id.* at 524. The Vaping Retailers similarly have not shown that they could not sell or sublease their shop locations.

*Yur-Mar, L.L.C. v. Jefferson Par. Council*, 451 F. App'x 397, 400–01 (5th Cir. 2011) (unpublished), involved a local ordinance limiting the hours for bars and other businesses. The ordinance was aimed at promoting "the health, safety, welfare, and morals of the community by shutting down bars during the hours most closely associated with dangerously high amounts of intoxication, drunk driving, violent crimes." *Id.* The court found no regulatory taking because the plaintiff bar owners could still "operate bars and other businesses, as they did

prior to the enactment of the new zoning rules. They can continue to sell alcohol." *Id.* at 400. Like the bar owners, the Vaping Retailers here could still operate their shops and sell tobacco products if they decrease the percentage and type of tobacco products in their stores. *See* Utah Code §§ 10-8-41.6.

*Second*, the Vaping Retailers' reasonable investment-backed expectations do not support a regulatory taking. Here, the court must look at the "expectation concerning the use of the parcel" and whether they can obtain a "reasonable return" on their investment. *Penn Central*, 438 U.S. at 136. "A properly focused inquiry looks to the effect of [S.B. 189] on the plaintiffs' property-rights expectations." *Vasquez*, 895 F.3d at 524. While the Vaping Retailers complaint about the grandfathering provisions and the product they have already purchased, the Vaping Retailers operate in a field where the Legislature has been extremely active, considering at least five bills regulating tobacco in the 2020 General Session.[31] Thus, "those who buy into a regulated field ... cannot object when regulation is later imposed." *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015); *see also Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013) (holding that bar owners' reasonable expectations included expansion of smoking ban).

---

[31] Pls.' Compl. ¶ 61.

And *third*, the character of the government action also points to no regulatory taking. As the Supreme Court observed, government interference is less likely to be a regulatory taking "when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124. For example, in *Vasquez*, the Seventh Circuit held that the Illinois law restricting a child sex offender's property use could not be "characterized as a physical invasion," but "merely adjusts the benefits and burdens of economic life." 895 F.3d at 524. Again, the Vaping Retailers' complaint of the "ever-changing regulation" of the tobacco business does not support a finding that the government action here is a regulatory taking. The statutes are not a "physical invasion" of the Vaping Retailers' stores, but simply an adjustment of the benefits and burdens of economic life to address the growing epidemic of teenage vaping.

In short, in balancing the *Penn Central* factors, the Vaping Retailers have not demonstrated a substantial likelihood of a regulatory taking where the statutes are aimed at protecting the health and safety of children and teenagers from the dangers of vaping, the regulation does not deprive the Vaping Retailers of all economic benefit, nor does it offend the Vaping Retailers' reasonable expectations as participants in a highly regulated field.

30

## CONCLUSION

For reasons set forth herein, the Court should deny the Vape Retailers'

Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted:
June 23, 2022

OFFICE OF THE UTAH ATTORNEY
GENERAL

*/s/ Kyle J.  Kaiser*
Kyle J. Kaiser
Joni J. Jones
*Attorneys for Defendants*

## WORD COUNT CERTIFICATION

I certify that **STATE DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EXPEDITED MOTION FOR  TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** contains 6,268 words and complies with DUCivR 7-1(a)(4).

DATED THIS 21st day of June, 2022.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Kyle J Kaiser
KYLE J. KAISER
Assistant Utah Attorney General
Counsel for Defendant