Joshua T. Collins (13674)
jcollins@sslc.gov
**CITY OF SOUTH SALT LAKE**
220 East Morris Ave, 2nd Floor
South Salt Lake City, Utah 84115
Telephone: (801) 483-6068

Kathryn J. Steffey (10245)
ksteffey@SHutah.law
Richard S. Snow (16576)
rsnow@SHutah.law
**SMITH HARTVIGSEN, PLLC**
257 East 200 South, Suite 500
Salt Lake City, Utah 84111
Telephone: (801) 413-1600
Facsimile: (801) 413-1620
*Attorneys for Defendant South Salt Lake City*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| EXOTIC SMOKE & VAPE, a Utah limited liability company; HOUSE OF HOOKAH SMOKE SHOP, INC., a Utah corporation; IVAPE LLC D/B/A IVAPESLC'S 1 STOP SHOP, a Utah limited liability company; MURRAY VAPES, LLC, a Utah limited liability company; RAJA ENTERPRISES, INC. D/B/A SMOKERS GURU #2, a Utah corporation; SHOP&GIFT ZONE, LLC, a Utah limited liability company; SMOKE CITY, INC., a Utah corporation; SMOKE LAND SLC, LLC, a Utah corporation; SMOKER'S CONNECTION LLC, a Utah limited liability company; SMOKERS POINT LLC, a Utah limited liability company; TARAN, INC. D/B/A B'S SMOKE SHOP, a Utah corporation; and WORLD OF VAPES LLC, a Utah limited liability company, <br><br>    Plaintiffs, | **DEFENDANT SOUTH SALT LAKE CITY'S MOTION TO DISMISS** <br><br> Case No. 2:22-cv-00408-HCN <br><br> Judge Howard C. Nielsen, Jr. |

|  |  |
|---|---|
| v.<br><br>HONORABLE SPENCER J. COX, Governor of the State of Utah, in his official capacity; NATHAN CHECKETTS, Executive Director of the Utah Department of Health, in his official capacity; ANGELA DUNN, M.D., Executive Director of the Salt Lake County Department of Health, in her official capacity; ERIC EDWARDS, Executive Director of the Utah County Health Department, in his official capacity; LEHI CITY, a municipality and political subdivision of the State of Utah; MIDVALE CITY, a municipality and political subdivision of the State of Utah; MURRAY CITY, a municipality and political subdivision of the State of Utah; SALT LAKE CITY, a municipality and political subdivision of the State of Utah; SOUTH SALT LAKE CITY, a municipality and political subdivision of the State of Utah; TAYLORSVILLE CITY, a municipality and political subdivision of the State of Utah; and WEST JORDAN CITY, a municipality and political subdivision of the State of Utah,<br><br>      Defendants. |  |

Defendant South Salt Lake City (the "**City**") respectfully submits this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## RELIEF REQUESTED AND GROUNDS THEREFOR

The Court should dismiss Plaintiffs' claims against the City because they fail to state a claim upon which relief can be granted. Specifically, Plaintiffs never allege any facts in their Complaint that would impose municipal liability on the City. That is, they never identify a City policy that has caused or will cause a violation of Plaintiffs' constitutional rights. The Court should therefore dismiss Plaintiffs' claims against the City.

## FACTS

1. Plaintiffs are business entities licensed under Utah law to conduct business as retail tobacco specialty businesses. (Complaint (Dkt. 2) at ¶ 1.)

2. Since 2012, the Utah Legislature has passed laws regulating retail tobacco specialty businesses. (*See id.* at ¶¶ 36–84.)

3. In 2020 and 2021, the Utah Legislature amended the laws regulating retail tobacco specialty businesses. (*See id.* at ¶¶ 61–84.)

4. One of those laws, Utah Code Ann. § 10-8-41.6 ("**Section 41.6**"),[1] now requires Plaintiffs to cease their business operations by July 1, 2022, because they are "purportedly located within 1,000 feet of a public or private K–12 school." (*Id.* at ¶ 84.) This is despite the fact that Plaintiffs previously enjoyed grandfathered status under prior versions of the law that permitted them be located within 1,000 feet of a school. (*See id.*)

5. The City is a municipality and political subdivision of the State of Utah. (*Id.* at ¶ 29.) The City's "officials are responsible for granting or denying applications for Retail Tobacco Specialty Business licenses under Utah Code Section 10-8-41.6(3)(a) and relevant portions of South Salt Lake City municipal code." (*Id.*)

6. Plaintiffs do not identify any specific portion of the City's municipal code in their Complaint. (*See id.*)

---

[1] Plaintiffs also address amendments to an almost identical statute, Utah Code Ann. § 17-50-333, applicable to counties. (*See* Complaint at ¶ 82.) Because that statute applies to counties instead of cities, it is not addressed as part of this Motion.

7. Plaintiffs filed their Complaint on June 16, 2022, alleging five claims against the City. (*See id.* at ¶¶ 228–78.)

8. Under their first claim, Plaintiffs allege a violation of their rights under the Fifth Amendment to the United States Constitution's Takings Clause. (*See id.* at ¶¶ 228–41.) Specifically, they claim the Utah Legislature's revocation of their grandfathered status and resulting obligation to comply with the 1,000-foot-from-a-school rule by July 1, 2022, as provided in Section 41.6, is an unconstitutional regulatory taking. (*See id.*)

9. Under their second claim, Plaintiffs allege a violation of their rights under the Fifth Amendment to the United States Constitution's Due Process Clause. (*See id.* at ¶¶ 242–52.) Specifically, they claim Section 41.6 violates their substantive and procedural due process rights because "the law requires revocation" of their business licenses without "notice . . . or an opportunity to be heard in a meaningful manner before or following the revocation." (*Id.* at ¶¶ 246–47.)

10. Under their third claim, Plaintiffs allege that Section 41.6's provisions concerning how the City should enforce the statute are unconstitutionally vague. (*See id.* at ¶¶ 253–61.)

11. Under their fourth claim, Plaintiffs allege that Section 41.6's provisions concerning registering, licensing, and permitting Plaintiffs' businesses violate the Supremacy Clause of the United States Constitution because the provisions conflict with the Food, Drug, and Cosmetic Act, United States Code, Title 21. (*Id.* at ¶¶ 262–67.)

12. Under their fifth claim, Plaintiffs allege that Section 41.6's provisions concerning the sale of tobacco and vape products violate Plaintiffs' right to free speech under the First Amendment to the United States Constitution. (*See id.* at ¶¶ 268–78.)

# ARGUMENT

A defendant may ask for the dismissal of a plaintiff's claim when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts apply rule 12(b)(6) by "first discard[ing] allegations in the complaint that are 'legal conclusions' or 'threadbare' recitals of the elements of a cause of action, supported by mere conclusory statements." *Soto for Estate of Jimenez v. Bd. of Cnty. Comm'rs of Caddo Cnty., Okla.*, 748 F. App'x 790, 793 (10th Cir. 2018) (unpublished) (brackets omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Next, they "accept[] as true the remaining, well-pleaded (that is, plausible, non-conclusory, and non-speculative) factual allegations and construe them in the light most favorable to the plaintiff." *Id.* (citing *Iqbal*, 556 U.S. at 679). If the well-pleaded facts viewed in a light most favorable to the plaintiff do not "state a claim upon which relief can be granted," the Court should dismiss the claim. Fed. R. Civ. P. 12(b)(6).

Plaintiffs have failed to state a claim against the City because their Complaint is devoid of allegations that could support a finding of municipal liability. "Congress did not intend municipalities to be held liable [under 42 U.S.C. § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691 (1978). It is therefore "not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Rather, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* That is, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives

by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (citation omitted). While these standards typically arise in *respondeat superior* circumstances, courts have extended them to claims involving municipalities implementing state rules or statutes.

The Tenth Circuit touched on this issue in *Whitesel v. Sengenberger*, 222 F.3d 861 (10th Cir. 2000). There, the plaintiff claimed pretrial service officers violated his constitutional rights by issuing a temporary restraining order and that the county[2] was liable because it "established the policy authorizing the officers to issue the order." *Id.* at 863. The district court granted the defendants' motion for summary judgment, but the Tenth Circuit remanded the issue of municipal liability because the parties never addressed whether the county had "executed a policy or custom." *Id.* at 870. The Tenth Circuit noted that, for the plaintiff to succeed on remand, he "must first prove that the pretrial service officers were acting pursuant to a policy created by the [county]." *Id.* at 871. Because the record established the pretrial service officers were acting pursuant to "a policy formulated by the judges of the First Judicial District of Colorado," the Tenth Circuit "emphasized that *the [county] cannot be liable for merely implementing a policy created by the state judiciary*." *Id.* at 871–72 (emphasis added). Rather, the plaintiff would have to demonstrate "that the [county] was 'the moving force' behind the pretrial service officers issuance of the discretionary orders." *Id.* at 872 (citation omitted).

Similarly, in *Ledbetter v. City of Topeka, Kan.*, the Tenth Circuit affirmed a district court's grant of summary judgment to a city because the plaintiff "failed to present any evidence indicating

---

[2] To be precise, the plaintiff in *Whitesel* brought his claim against the Board of County Commissioners. *See Whitesel*, 222 F.3d at 863.

[the municipal judge] or the clerk who affixed his signature stamp [to an arrest warrant] acted as municipal policymakers." 318 F.3d 1183, 1190 (10th Cir. 2003). In short, the district court had correctly reasoned the municipal judge's authority was "established by *state law*" and "was circumscribed by his judicial *duty to follow state law*." *Id.* at 1189–90 (emphasis added). Accordingly, the act of signing the arrest warrant "was not done under the auspices of the [c]ity and could not be interpreted as promulgating municipal policy." *Id.*

More specific to the current matter, the Seventh Circuit applied the Supreme Court's standards for municipal liability to explicitly reject an argument that a city's policy of enforcing state statutes was sufficient to establish the city's liability. *See Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir. 1991). In *Surplus*, a city police officer seized rings from a pawn shop, and the pawn shop sued the city under § 1983. *See id.* at 788–89. The Seventh Circuit departed from the district court's reason for dismissing the pawn shop's complaint, focusing instead on whether there was "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 790.

The pawn shop argued that state statutes unconstitutionally permitted the seizure and the city's "decision simply to enforce these 'unconstitutional' Indiana statutes was a 'municipal policy' that 'caused' the [alleged constitutional violation]." *Id.* at 791. The Seventh Circuit rejected this argument, reasoning that to accept it "would render meaningless the entire body of precedent from the Supreme Court . . . that requires culpability on the part of a municipality and/or its policymakers." *Id.* at 791 n.4. "[It] would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors—here, the Indiana legislature." *Id.* In short, the Seventh Circuit found the argument "wholly without merit," *id.*, and reiterated that

7

"the fault for the deprivation must lie with [the city] itself, not with [the officer] or with the Indiana statutes." *Id.* at 793.

Several district courts, including the District of Utah, have followed the Seventh Circuit's reasoning. *See Nichols v. Brown*, 859 F. Supp. 2d 1118, 1133 (C.D. Cal. 2012) (granting the city's motion to dismiss because the plaintiff's claim against the city "appear[ed] to be based on the fact that these defendants enforce state law."); *Walker v. Wegener*, Civil Action No. 11-cv-03238-PAB-KMT, 2012 WL 4359365, at *10 (D. Colo. Aug. 30, 2012) (unpublished) (granting the county's motion to dismiss because the plaintiffs "premise[d] their claim for municipal liability on their constitutional challenge to . . . *state* statutes" that "do not constitute a municipal policy for the purposes of § 1983 claim municipal liability.") (citations omitted); and *Walton v. U.S. Bank*, No. 2:09-CV-931, 2010 WL 3928507, at *5 (D. Utah Oct. 4, 2010) (unpublished) (granting a city's motion to dismiss because "[t]he mere enforcement of a state law by a municipality does not give rise to § 1983 municipal liability.") (citation omitted).

The same result follows here. Plaintiffs make no allegations concerning a City ordinance, resolution, policy of any kind, or act by a policymaker that could provide the basis for the City's liability. (*See generally* Complaint.) Rather, Plaintiffs acknowledge that the Utah Legislature—not the City—passed Section 41.6. (*Id.* at ¶¶ 61–62, 75, 81–81.) Accordingly, there is no basis for the City to be liable for complying with Section 41.6 since it is a state policy, not a City policy. The Court should therefore dismiss each claim against the City.

It appears Plaintiffs' theory is that the City's liability arises from its "policy" to comply with state law. As explained above, this argument is meritless because, if accepted, it would make the City—and all other municipalities—"receptacles of liability for violations caused entirely by

8

[the Utah Legislature]." *Surplus*, 928 F.2d at 791 n.4. Indeed, "[i]f the language and standards from *Monell* are not to become a dead letter, such a 'policy' simply cannot be sufficient to ground liability against a municipality." *Id.* at 791–92 (citation omitted).

An examination of Section 41.6 identifies the distinction between state policy and City policy because it grants the City discretion to act on City policy in some circumstances but not others. To begin, Section 41.6's non-discretionary provisions relate to issuing and renewing business licenses for retail tobacco specialty businesses. Specifically, Section 41.6 requires a person to obtain "a license from the municipality in which the retail tobacco specialty business is located." Utah Code Ann. § 10-8-41.6(3)(a). The "municipality may only issue a retail tobacco specialty business license to a person if the person complies with the provisions of Subsections (4) and (5)." *Id.* § 10-8-41.6(3)(b). Accordingly, Section 41.6 restricts the City's discretion because it "*may only*" issue licenses to businesses that comply with subsections (4) and (5). *Id.* (emphasis added).

Subsection (4) reiterates Section 41.6's license-issuing restrictions. It provides that "[e]xcept as provided in Subsection (7), a municipality *may not* issue a license . . . if the retail tobacco specialty business is located within: (i) 1,000 feet of a community location; (ii) 600 feet of another retail tobacco specialty business; or (iii) 600 feet from property used or zoned for: (A) agriculture use; or (B) residential use." *Id.* § 10-8-41.6(4)(a) (emphasis added). Subsection (7) grants an exemption to subsection (4) if, among other requirements, the retail tobacco specialty business "is not located within 1,000 feet of a public or private kindergarten, elementary, middle, junior high, or high school" as of July 1, 2022. *Id.* § 10-8-41.6(7)(a)(iii), (7)(c)(iii). Accordingly,

9

Section 41.6 gives the City no discretion and expressly prohibits the City from issuing a business license to a retail tobacco specialty business located within 1,000 feet of a school.

Subsection (5) reiterates Section 41.6's license-issuing restrictions and creates a license-renewal restriction for the City. It provides that municipalities "*may not* issue or renew a license for a person to conduct business as a retail tobacco specialty business until the person provides the municipality with proof that the retail tobacco specialty business has" a valid permit from the local health department and a valid license from the State Tax Commission. *Id.* § 10-8-41.6(5) (emphasis added). Accordingly, Section 41.6 grants no discretion to the City when it prohibits the City from issuing or renewing business licenses without first receiving proof of a valid permit from the local health department and a valid license from the State Tax Commission.

Unlike the limitations imposed by subsections (3), (4), and (5), subsection (6) gives the City discretion concerning how it issues, renews, suspends, or revokes retail tobacco specialty business licenses. First, it provides that Section 41.6 does not "require[] a municipality to issue a retail tobacco specialty business license." *Id.* § 10-8-41.6(6)(a)(i). Second, it provides that Section 41.6 does not "prohibit[] a municipality from adopting more restrictive requirements on a person seeking a license or renewal of a license to conduct business as a retail tobacco specialty business." *Id.* § 10-8-41.6(6)(a)(ii). Third, it provides that "[a] municipality *may* suspend or revoke a . . . license" if certain circumstances exist, including "under any other provision of state law or local ordinance." *Id.* § 10-8-41.6(6)(b)(iv) (emphasis added).

Dispositively, none of Plaintiffs' claims rely on an allegation that the City has exercised its discretion under Section 41.6 to (1) refuse to issue them a license, (2) adopt more restrictive requirements related to issuing or renewing licenses, or (3) suspend or revoke Plaintiffs' licenses.

Instead, their claims focus entirely on how Section 41.6—not the City's policies—impacts their businesses and allegedly violates the United States Constitution. (*See generally* Complaint.) Their first claim is that Section 41.6—not a City policy—constitutes a regulatory taking because it eliminates their previously grandfathered status that exempted them from Section 41.6's 1,000-feet-from-a-school requirement. (*See id.* at ¶ 236.) It says nothing about the City refusing to grant Plaintiffs a license, suspending or revoking Plaintiffs' license, or adopting additional restrictive requirements. It is simply a direct attack on the Utah Legislature passing Section 41.6. Accordingly, it does not state a claim for municipal liability against the City and should be dismissed.

Plaintiffs' second claim is that Section 41.6 "requires the revocation" of their licenses in violation of the Due Process Clause. (*Id.* at ¶ 247.) This allegation is a legal conclusion that is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a compliant is inapplicable to legal conclusions.") Nevertheless, if it is true, the City is not liable because Section 41.6 is state law, not City Policy, and "[t]he mere enforcement of a state law by a municipality does not give rise to § 1983 municipal liability." *Walton*, 2010 WL 3928507, at *5 (citation omitted).

In fact, Section 41.6 does not require the City to revoke Plaintiffs' licenses. Rather, it prohibits the City from issuing and renewing licenses in certain circumstances, *see* Utah Code Ann. § 10-8-41.6(4) & (5), and grants the City discretion to revoke the licenses in other circumstances. *See id.* § 10-8-41.6(6)(b). Accordingly, Plaintiffs' second claim fails because they have made no allegations that the City has enacted a policy within the limits of its discretion to revoke Plaintiffs' licenses. (*See* Complaint.)

Plaintiffs' third claim is that Section 41.6 is unconstitutionally vague because it "fail[s] to articulate clear standards that prevent arbitrary and discriminatory enforcement by [the City]." (*Id.* at ¶ 255.) This is a direct attack against the Utah Legislature's drafting of Section 41.6 that says nothing about the City establishing and acting on a policy pursuant to its discretionary authority and then causing a constitutional deprivation to Plaintiffs. Accordingly, the Court should dismiss this claim against the City.

Plaintiffs' fourth claim is that Section 41.6's provisions violate the Supremacy Clause because they conflict with provisions from the Food, Drug, and Cosmetic Act. (*Id.* at ¶ 263.) This is another direct attack against the Utah Legislature's drafting of Section 41.6 that has nothing to do with a City policy enacted pursuant to its discretionary authority and then used to cause a constitutional harm to Plaintiffs. The Court should therefore dismiss this claim against the City.

Plaintiffs' fifth claim is that Section 41.6 violates their right to free speech because it "forbids . . . Plaintiffs from accurately describing or offering their products for sale." (*Id.* at ¶ 270.) Again, this claim directly attacks Section 41.6—a state law, not a City policy—and therefore cannot support a claim for liability against the City. The Court should therefore dismiss it against the City.

In sum, Plaintiffs' claims against the City do not allege, address, or relate to a City policy other than enforcing state law. Because the state law—not a City policy—is the "moving force" for Plaintiffs' alleged injuries, Plaintiffs have failed to state a cognizable claim for municipal liability against the City. Accordingly, the Court should dismiss each claim against the City.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion by dismissing each of Plaintiffs' claims against the City.

Respectfully submitted this 8th day of July 2022.

SMITH HARTVIGSEN, PLLC

/s/ Kathryn J. Steffey
Kathryn J. Steffey
Richard S. Snow
*Attorneys for Defendant South Salt Lake City*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 8, 2022, I served a true and accurate copy of the foregoing DEFENDANT SOUTH SALT LAKE CITY'S MOTION TO DISMISS on the parties who have appeared via electronic filing and the parties who have not appeared by U.S. Mail addressed as follows: